463 So.2d 745 (1985)
Walter FAUST, Jr.
v.
Steve LOMBARDO, James P. White, The Blue Dawn Oyster Company, the Merit Insurance Company and St. Paul Fire and Marine Insurance Co.
No. CA-2202.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1985.
Writ Denied March 15, 1985.
*746 Frederick A. Miller, New Orleans, for defendants-appellants, James R. White, d/b/a Blue Wave Oyster Co. and Merit Ins. Co.
Frederick J. Gisevius, Jr., Jane M. Gisevius, John Wade Carpenter, New Orleans, for plaintiff-appellee, Walter Faust, Jr.
Before KLEES, CIACCIO and WARD, JJ.
WARD, Judge.
James R. White, d/b/a Blue Wave Oyster Company, and his insurer, Merit Insurance Company, appeal a judgment based *747 upon a jury verdict in favor of Walter Faust, Jr., for $100,000.00 in damages sustained in an automobile collision. The defendants contend that Faust failed to prove that all of his injuries were caused by the accident and further that the amount awarded in the Trial Court judgment was excessive. We find no manifest error in the jury's findings and affirm the judgment.
The accident happened at the intersection of St. Claude and Poland Avenues in the City of New Orleans at approximately 6:15 on the rainy morning of March 30, 1981. Blue Wave's pickup truck, driven by Steve Lombardo, ran into the back of Mr. Faust's car which was stopped at the traffic signal. The defendants did not appeal the jury's finding of liability.
Mr. Faust alleged that the force of the collision caused his head to hit the car steering wheel; his only apparent injury at that time was a bruise on the head. However, in the following months, Mr. Faust, who was 64 years old at the time of the accident, sought medical treatment for headaches, neck and back pain, numbness in his extremities and related problems. In late July 1982, fifteen months after the accident, Mr. Faust was admitted to Hotel Dieu Hospital in a state of great mental confusion, unable to walk or speak. Tests revealed a subdural hematoma, a blood clot between the skull and brain, requiring immediate surgery and ten days hospitalization.
On appeal, the defendants first contend that it was manifest error for the jury to find that the collision caused Mr. Faust's subdural hematoma. The defendants argue that it probably was caused by Mr. Faust's falling and hitting his head a few weeks before the surgery, and whatever the cause of the hematoma, it had not existed for the fifteen months between the accident and the surgery.
Since both Mr. Faust and the defendants presented extensive evidence concerning the development of the hematoma, we have reviewed that evidence in resolving the issue of causation.
The first doctor to testify was Dr. Victor Chisesi, an orthopedic surgeon, whom Mr. Faust consulted a few days after the accident. Mr. Faust told Dr. Chisesi that since the accident he had been having headaches, neck and low back pain, dizzy spells, and numbness in his right hand. Dr. Chisesi testified that he believed Mr. Faust had sustained an acute cervical and lumbosacral strain and that the collision had aggravated pre-existing arthritic changes in his spine, causing them to become symptomatic. Dr. Chisesi treated Mr. Faust with medication and therapy, discharging him in October of 1981 because his condition was much improved. In March 1982, Mr. Faust returned to Dr. Chisesi, complaining of severe headaches and neck and back pain. Dr. Chisesi reinstituted medication and physical therapy, but he still believed the spinal condition was the cause of the headaches, even though their severity aroused his suspicions. After the surgery to drain the hematoma, Mr. Faust again went to Dr. Chisesi and told him that his headaches were markedly diminished. Dr. Chisesi changed his opinion, and now, in retrospect, he believes that the hemotoma had been causing the headaches all along. However, Dr. Chisesi testified that it was possible the headaches were a result of the cervical strain or other causes and admitted that he was not a specialist in neurology, the medical field dealing with the causes, symptoms and treatment of subdural hematomas.
Dr. Donald Richardson, the neurosurgeon who operated on Mr. Faust and the only doctor to actually examine the hematoma, described it as "longstanding." He based this opinion on the consistency of the blood in the hematoma and the thickness of the membrane surrounding it. He estimated the age of the hematoma as "obviously older than a month and probably much older" and said it "could be anywhere from a few weeks to many months." Dr. Richardson testified that symptoms of a subdural hematoma are typically slow to develop in a patient of Mr. Faust's age. Given a choice of which traumathe automobile collision or the fallcaused the hematoma, *748 Dr. Richardson stated his belief that the older one was the cause.
Dr. Richardson testified that the age of a subdural hematoma cannot be determined by an examination of the fluid drained from it. However, Dr. J. Ralph Meier, the pathologist who examined the fluid specimen from Mr. Faust's hematoma, testified that he could indeed estimate the hematoma's age. Dr. Meier stated that the character of the fluid which collects in a subdural hematoma changes as the blood breaks down over time. Because he found recent blood clots and intact blood cells in the opaque, dark brown fluid drained from Mr. Faust's hematoma, Dr. Meier believed it was caused by a blow to the head which occurred only one to three weeks before the surgery. The defendants presented the expert testimony of Dr. Bert R. Bratton, a neurosurgeon who had examined Mr. Faust's medical records and the depositions of Mr. Faust and his treating physicians, Dr. Chisesi and Dr. Richardson. He testified that the color and character of the fluid in a subdural hematoma are a better indicator of its age than the thickness of its membrane. He stated that the fluid in a four to six week-old hematoma is dark and bloody, while that from an extremely old one is straw-colored or golden. He further stated that symptoms, including headaches, confusion, and paralysis, usually become severe enough to cause a patient with a hematoma to seek medical attention within four to six weeks after the trauma which caused it. He gave his opinion that Mr. Faust's hematoma developed six to eight weeks before the surgery.
There is little evidence concerning Mr. Faust's fall which defendants assert as a possible cause of the hematoma. Mr. Faust testified only that five or six weeks before the hematoma was discovered, he was alone in his sister's yard when he became dizzy and fell, hitting his head on the pavement. He testified that, in falling, he caught himself with his arm and sustained only a scratch near his eye for which he did not seek medical attention.
After hearing this evidence during a fiveday trial, the jury answered interrogatories, finding that the automobile collision caused Mr. Faust's head injury as well as his spinal injury. We cannot say this finding was manifestly erroneous.
The jury, as trier-of-fact, was obliged to weigh and evaluate all testimony of medical experts as well as lay persons to determine the most credible and reasonable explanation of the cause of the subdural hematoma. A trier-of-fact may accept or reject the opinion expressed by any medical expert, depending upon the relationship between the factual evidence and the expert's qualifications and testimony. Generally, the testimony of a treating physician is entitled to more weight than that of an equally qualified physician whose opinion is based only upon an examination of records, reports and other documents; and the opinion of a specialist as to matters within his field is entitled to greater weight than an opinion on the same subject by a specialist in another field.
Dr. Richardson, and the pathologist, Dr. Meier, both treating physicians, gave opinions within their specialties. Although the testimony of these two doctors was contradictory, after considering the entire record, we cannot say that it was unreasonable for the jury to have given the most weight to Dr. Richardson's opinion that the hematoma was probably much more than a few weeks old.
As an alternative rationale for the jury's finding of causation, we believe it entirely plausible that the hematoma was caused by Mr. Faust's falling and striking his head, but that defendants remain liable since the cause of the fall was dizziness, a persistent lingering symptom of the neck and back injuries from the automobile accident. Although indirect, causation is still present. Mr. Faust's fall was a foreseeable result of the collision, and not an intervening cause of the hematoma as defendants argue. Therefore, the defendants are liable for the hematoma, even if caused by *749 the fall, as well as for the neck and back injuries which were a more direct result of the collision.
Defendants' second contention on appeal is that the award of $100,000.00 in damages to Mr. Faust was excessive. The jury returned that lump sum in unspecified damages upon Mr. Faust's claim for special damages of approximately $11,000.00, future medical expenses, loss of past and future earnings, and personal injuries acute cervical and lumbar strain, aggravation of arthritis of the spine, nervousness and emotional strain, as well as the subdural hematoma. Although the defendants contested the amount of the verdict, the Trial Judge denied their rule for remittitur or a new trial. On appeal, the defendants contend that Mr. Faust failed to prove several elements of the damages he alleged. They say the proof was insufficient to compensate Mr. Faust for future medical expenses, lost earnings, or aggravation of the arthritis and nervous condition.
When a judgment itemizes the damages it compensates, this Court can evaluate each element of the award independently of the others. However, in cases such as this, where the plaintiff recovers an in globo award, it is impossible to discern what amounts the jury felt were appropriate for various elements of damages. Therefore, we must consider all proven injuries to determine if, taken as a whole, the damage award is excessive.
Since we include damages for Mr. Faust's subdural hematoma and find it was within the jury's discretion to compensate him for lost earnings, acute cervical and lumbar strain, and aggravation of arthritis and a nervous condition in addition to the special damages, we cannot say the award of $100,000.00 is clearly excessive.
We therefore affirm the judgment in favor of Walter Faust, Jr., with all costs of this appeal to be paid by defendants.
AFFIRMED.