522 So.2d 1242 (1988)
Beverly BRUNO
v.
SECURITY GENERAL LIFE INSURANCE COMPANY.
No. CA 7231.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
*1243 Cullen P. Landry, New Orleans, for mover/plaintiff.
Maria I. O'Byrne Stephenson, Linda A. Liljedahl, Timothy Crooks, New Orleans, for defendant.
Before BARRY, BYRNES and ARMSTRONG, JJ.
ARMSTRONG, Judge.
The plaintiff appeals from the First City Court's judgment against her, and in favor of her medical insurer, holding that certain prescribed items were not covered by her medical insurance policy because they were not "medically necessary". We affirm.
I FACTS
The appellant, Beverly Bruno ("Bruno") filed a claim with her medical insurer, Security General Life Insurance Company ("Security") for reimbursement for expenses she alleged were covered under her policy. Specifically, Bruno sought reimbursement for various vitamins, minerals, herbs, and food supplements prescribed by her physician, Dr. David L. Duggar. Security denied coverage stating that the submitted expenses did not fall within the policy issued because the prescribed items were not "drugs or medicines" and because they comprised expenses which were not "medically necessary". Bruno then filed suit alleging that Security's refusal to pay was arbitrary and capricious. Accordingly, Bruno sought to recover a sum equal to double the amount of benefits alleged due under the policy pursuant LSA-R.S. 22:657.[1]
At trial, the parties agreed upon the following stipulations: 1) the amount in controversy is $1,800.00; 2) the policy and drug rider [attached to and made part of the policy] were in full force and effect at the time the claims were submitted; 3) that it would be Dr. Duggar's [Bruno's treating physician's] testimony that in his opinion, the vitamins, minerals, herbs, and food supplements he prescribed for Bruno are "drugs or medicines"; and 4) [That Dr. Duggar would testify that] the tests and clinical exams he ordered were essential and were what determined, in addition to the patient's history and physical exam, his diagnosis and course of management.
Other than Bruno's testimony at trial, the evidence presented consisted solely of the above stipulations together with the depositions of Bruno, Dr. Duggar, Dr. McCaffery (a medical expert hired as a consultant to Security), and Phyllis Lee Barto, a claims director for Security. The trial court found, inter alia, that the submitted claims were not "medically necessary" and rendered judgment in favor of Security. All costs were assessed against Bruno.

II ISSUES PRESENTED
The policy in question provides, in pertinent part:

*1244 If an insured person ... shall require drugs and/or medicines on account of injury or sickness, the Company will pay... for such drugs and/or medicines when prescribed by a physician ...
EXCLUSIONS
This policy does not cover ... medical expenses which are not medically necessary...
On appeal, Bruno argues that she met her burden of proving that the vitamins, minerals, herbs, and food supplements prescribed by her physician were "drugs and/or medicines", and that the trial court erred in concluding that they were not. However, we need not decide the merits of that issue because, even assuming Bruno is correct, coverage under the drug and medicine rider is not automatic. As is clear from the exclusions provision, any expenses claimed must be "medically necessary" to be recoverable under the policy. Thus, the dispositive issue in this appeal is whether the prescribed items were "medically necessary".

III BURDEN OF PROOF AND SCOPE OF REVIEW
Of course, an insurer has the burden of proving the applicability of the particular exclusionary provision relied upon in denying coverage.[2] In rendering a judgment in favor of Security, the trial court was persuaded by the deposition testimony of Dr. McCaffery, Security's medical expert consultant. Appellate review of the findings of a trial court is limited to a determination of whether those findings are "clearly wrong" or "manifestly erroneous".[3] Although this Circuit has held that where, as here, a trial court's findings are based upon pleadings and deposition testimony, some less restrictive standard of review is warranted (see Schwarz v. Bourgeois, 422 So.2d 1176, 1178, rehearing denied, (La.App. 4th Cir.1982), writ denied, 429 So.2d 153 (La.1983); and Jones v. New Orleans Public Belt Railroad Commission, et al., 464 So.2d 919 (La.App. 4 Cir. 1985)), the Louisiana Supreme Court has since rejected that view. Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825, (La.1987). We turn now to a review of the relevant testimony.
Dr. Duggar, Bruno's treating physician, is a board certified pediatrician. However, he treats adults as well as children in the area of specialization he refers to as "wellness" medicine. Dr. Duggar describes this specialty as involving a holistic and nutritional approach to the prevention and treatment of chronic illness. Dr. Duggar testified that the items he prescribed for Bruno were for the treatment and prevention of constipation, fatigue, hypoglycemia, malabsorption, and "other problems associated with the digestive tracts." Dr. Duggar's diagnosis of malabsorption was based upon a hair-mineral analysis test together with Bruno's history of constipation and indigestion. Dr. Duggar stated that the hair-mineral analysis test was recognized by the World Health Organization "for screening for the presence of toxicity in the system". He also testified that this test was relied upon by various researchers to reflect nutrient levels. Finally, Dr. Duggar stated that the items he prescribed for Bruno were "medically necessary" for the treatment and prevention of the problems related above.
Dr. McCaffery is Board certified in Internal Medicine and has a sub-specialty in gastroenterology. Dr. McCaffery described the field of gastroenterology as including the diagnosis and treatment of diseases of the gastrointestinal tract "ranging from the mouth to the anus and anywhere in between", including the diagnosis and treatment of malabsorption and constipation. He testified as follows: A hair-mineral analysis test cannot determine the presence of malabsorption. Rather, malabsorption is first suspected based upon symptoms which should include weight *1245 loss, diarrhea, cramps, bloating, swelling of the ankles, and, perhaps, some manifestation of vitamin deficiency.[4] Once these symptoms are present, the existence of malabsorption is then confirmed with blood tests, radiological exam studies of the small intestine, and quantitating stool specimens. If those tests reveal a malabsorptive condition, then further tests would be required in order to determine its underlying cause. Only then could a proper course of treatment be prescribed. In any case, Dr. McCaffery also testified that, even assuming a malabsorptive condition existed in Bruno, he was not aware that any of the items prescribed by Dr. Duggar would have had any effect other than to have caused Bruno's problems. In particular, Dr. McCaffery pointed out that one of the items prescribed by Dr. Duggar, calcium carbonate, would either cause or aggravate Bruno's constipation. Dr. McCaffery's testimony can be summarized as follows: The items prescribed for Bruno by Dr. Duggar were not "medically necessary" either because there was no proper diagnosis warranting particular treatment in the first instance, or, because, even assuming the existence of the particular symptoms alleged by Bruno, the items prescribed would not help alleviate them.
The opinion of a specialist as to matters which fall within his field is entitled to greater weight than an opinion on the same subject by a specialist in another field.[5] Of course, diagnosis and treatment of gastrointestinal problems, including those described by Bruno, fall within the particular expertise of gastroenterology, Dr. McCaffery's sub-specialty. Accordingly, we conclude that the evidence in this case does provide a sufficient basis to support a finding that the items prescribed by Dr. Duggar were not medically necessary. Although Dr. Duggar asserts that the items he prescribed were medically necessary for the treatment of Bruno's various symptoms, we cannot say that the trial court's reliance on the contrary testimony of Dr. McCaffery was manifestly erroneous.[6], [7] The judgment of the trial court is AFFIRMED.
NOTES
[1] LSA-R.S. 22:657(A) provides, in pertinent part:

All claims arising under the terms of health... contracts issued in this state ... shall be paid not more than thirty days from the date upon which written notice and proof of claim... are furnished to the insurer unless just and reasonable grounds [for non-payment]... exist. Failure to comply ... shall subject the insurer to a penalty, payable to the insured, of double the amount of the health ... benefits due under the terms of the policy ...
[2] Taylor v. Security Industrial Insurance Co., 454 So.2d 1260 (La.App. 2d Cir.1984); Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584 (La.App. 1st Cir.1984); Barber v. Best, 394 So.2d 779 (La.App. 4th Cir.1981).
[3] Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La. 1978).
[4] The record discloses evidence of vitamin deficiency based upon the hair mineral analysis test. However, none of the other symptoms specified by Dr. McCaffery were mentioned by Dr. Duggar.
[5] Faust v. Lombardo, 463 So.2d 745, 748 (La. App. 4 Cir.1985), writ denied, 464 So.2d 1380 (1985).
[6] Bruno contends that the trial court should not have given greater weight to Dr. McCaffery's testimony than that of her treating physician because Dr. McCaffery never examined her. It is, of course, generally true that the testimony of a treating physician is entitled to greater weight than that of an equally qualified physician whose opinion is based only on an examination of records, reports and other documents. See, e.g., Faust, supra, at 748. cf. Ortigo v. Merritt, 488 So.2d 1051 (La.App. 2 Cir.1986). However, such deference to the treating physician's testimony has no application here because Dr. McCaffery's testimony had nothing to do with the diagnosis of any disease or illness that may have been present in Bruno. Rather, his testimony was to the effect that one cannot determine, in any patient, the existence of a malabsorptive condition by looking at the results of a hair-mineral analysis test, and that none of the vitamins, minerals, herbs, and food supplements prescribed would be effective in treating such a condition in any patient if it were found to exist. Thus, examination of Bruno for purposes of this kind of testimony was not necessary.
[7] Although we believe Bruno's testimony regarding the positive effect of the prescribed items on her alleged symptoms to be sincere, her testimony is not persuasive with respect to whether these items were "medically necessary". We think that is a determination more properly made by physicians.