BECKER, Judge.
Defendants appeal the judgment finding them liable for the damages plaintiff sustained as a result of a slip and fall on their property. Plaintiff initiated this action seeking damages for the injuries she sustained when she slipped and fell in the parking lot of the Sears Automotive Center. The jury rendered a verdict in favor of plaintiff and awarded her damages in the amount of $66,800.00. Defendants ap *498 peal seeking reversal of the jury’s verdict, or in the alternative, a decrease in the damage award. Plaintiff has answered the appeal seeking an increase in the damage award.
On appeal, defendants allege, as specifications of error, that
(1) the trial judge erred in failing to grant a directed verdict in favor of Sears and Allstate;
(2) the jury erred in finding the area which plaintiff fell unreasonably dangerous;
(3) the jury erred in finding Sears negligent;
(4) the jury erred in finding that Sears’ negligence caused plaintiff’s accident; and
(5) the jury abused its discretion in the amount of damages awarded.
On December 2, 1985, plaintiff, Mary Ford, arrived at the Sears Lake Forest Automotive Service Center at approximately 7:15 a.m. She parked her car in the parking lot, walked to the service center and attempted to enter the accessory shop. Mrs. Ford was informed by a Sears employee that the store would open at 7:30 a.m. As the weather that day was cool, Mrs. Ford decided to return to her car to await the opening of the store. Upon stepping down into the parking lot from the sidewalk adjacent to the service center, plaintiff slipped and fell, fracturing her ankle in two places. Subsequent to the fall, Mrs. Ford found sand in her shoes, and pebbles and a wet spot on the back of her pants.
Immediately after the accident, plaintiff was taken to Pendleton Memorial Methodist Hospital where she remained for ten days. Dr. Rosenkrantz, the physician on call at the emergency room, diagnosed plaintiff as having fractured her left ankle in two places. A short leg cast was applied. Upon discharge from the hospital, the plaintiff remained in a short leg cast and ambulated with a walker. Dr. Rosen-krantz indicated that the plaintiff was not to place any weight on her left side. The cast was removed in January 1986, and plaintiff was instructed to begin full weight bearing on the left leg and foot. In March 1986, plaintiff progressed to ambulating with the assistance of a walking cane, and in June, plaintiff was instructed to use an elastic ankle support. X-rays taken in September 1986 revealed that both fractures had healed. However, in November 1986, x-rays taken showed mild degenerative changes in the joints of the left ankle. X-rays of the right ankle were normal. Plaintiff was still under the care of Dr. Rosenkrantz at the time of the trial.
At trial, Dr. Rosenkrantz assigned plaintiff a twenty per cent permanent physical impairment and loss of function of the left foot and ankle. He testified that the arthritic changes in plaintiff’s left ankle were the result of the fractures, and would probably worsen over time. He also stated that Mrs. Ford would need to stay on some type of arthritic medication, and may walk with a limp on occasion. Dr. Rosenkrantz further noted that plaintiff had developed bone spurs on the left ankle which would require further surgery. He testified that it was his opinion that the bone spurs were also a result of the fractures plaintiff sustained to her left ankle.
Eugene Woods, an insurance adjuster hired by defendants to investigate the accident scene, testified at trial that he saw “loose asphalt near the curb in the sidewalk, some visible stains and also what appeared to be a difference in the level of asphalt next to the curbing.” Wilford Gal-lardo, plaintiff’s expert, upon examining photographs of the accident scene taken by Woods, noted the area had peaks and valleys which were cause by uneven settling. Mr. Gallardo testified further that there was a discoloration to the area which made the uneven surface difficult to see. According to plaintiff’s expert, the camouflaged peaks and valleys in the asphalt created an extremely hazardous condition because a person stepping down on the asphalt could not see the uneven surface.
Defendants’ expert, Dennis Howard, while concluding there was no hazardous conditions in the parking lot, did note the existence of the discoloration of the asphalt. However, it was his opinion that the discoloration did not create a defect in *499 the property. The discoloration, according to Mr. Howard, may have been “some oil residue or some lubrication residue.” Defendants’ only other witness, Jonell Preston, Sears’ Automotive Center manager at the time of the accident, testified that he knew of no other accidents in the area except for plaintiff’s, and that Sears had personnel who cleaned the parking lot every morning. He also testified that he had assisted plaintiff after the accident and did not see any debris.
After plaintiff presented her case, defendants moved for a directed verdict, arguing that the plaintiff had not met her burden of proof. The trial judge denied the motion. After a full trial on the merits, the jury rendered a verdict in favor of plaintiff and awarded $66,800.00 in damages. Upon the motion of plaintiff, the trial judge made the jury verdict the judgment of the court.
A directed verdict may be granted only when, after considering all the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, the facts and evidence are so overwhelmingly in favor of the moving party that the trial judge believes reasonable men could not arrive at a contrary verdict. L.S.A.-C.C.P. Article 1810; Roberts v. St. Bernard Parish School Board, 427 So.2d 676 (La.App. 4th Cir.1983); writs denied, 433 So.2d 1053 (La.1983). Oppenheim v. Murray Henderson, 414 So.2d 868 (La.App. 4th Cir.1982); Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979). However, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair minded men, in exercise of impartial judgment, might reach different conclusions, the motion should be denied, and the case submitted to the jury. Roberts, supra; Oppenheim, supra.
We cannot say the trial judge erred in denying defendants’ motion for a directed verdict in light of the standard set out above. The evidence presented does not exclude the possibility that reasonable minds could find in favor of the plaintiff. We find that there was sufficient evidence for a jury to conclude that plaintiff could prove her case by a prepondance of the evidence.
The true issue on appeal is the assessment of credibility of the witnesses in the light of the conflicting lay and expert testimony. The jurisprudence is clear that where there is a conflict in testimony given among witnesses, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review absent a finding that the trier of fact’s determinations are clearly wrong or manifestly erroneous. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Nailor v. International Harvester Co., 430 So.2d 784 (La.App. 5th Cir.1983), writ denied, 437 So.2d 1148 (La.1983); Dieudonne v. Guidry, 336 So.2d 990 (La.App. 3rd Cir 1976), writ denied, 339 So.2d 853 (La.1976).
There is no dispute that Mrs. Ford slipped and fell at the Sears Automotive Center. Nor is there any question that as a result of the fall, plaintiff sustained a fracture of her left ankle in two places. Defendants do argue that the accident occurred through no faults or negligence on the-part of Sears and/or any of its employees.
Before a plaintiff can recover for the alleged negligent conduct of the defendant, it must be established that the conduct complained of constituted a breach of a legal duty imposed to protect against the particular risk involved. Shelton v. Aetna Casualty and Surety Co., 334 So.2d 406 (La.1976); Guillory v. Audubon Insurance Company, 417 So.2d 892 (La. 3rd Cir.1982). In the case at bar, the question is whether the defendant breached its duties as a landowner/occupier to plaintiff, an invitee, under Civil Code article 2315.
An occupier of premises has the duty to exercise reasonable or ordinary care for the safety of invitees commensurate with the particular circumstances involved. The occupier thus owes a duty to avoid reasonably foreseeable dangers to his invitee and to keep his premises safe from hidden dangers in the nature of traps or pitfalls in that they are not known to the invitee and *500 would not be observed and appreciated by him in the exercise of ordinary care. This involves reasonable prior discovery of such unobservable dangerous conditions of the premises, and correction thereof or a warning to the invitee of the danger. Crochet v. Freeman, 504 So.2d 1064 (La.App. 1st Cir.1987); Collins v. Christophe, 479 So.2d 537 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1021 (La.1986); Lear v. United States Fire Insurance Company, 392 So.2d 786 (La.App. 3rd Cir.1980), Levert v. Traveler’s Indemnity Co., 140 So.2d 811 (La.App. 3rd Cir.1962). The plaintiff, therefore, to succeed in her suit, must prove that there was something in the parking lot which made it unreasonably dangerous and that Sears knew or should have known of the unreasonably dangerous condition.
Plaintiffs expert, Wilford Gallardo, testified at trial there were camouflaged peaks and valleys in the area where plaintiff fell. He further stated that such camouflaged conditions combined with the unevenness of the area created a safety hazard. Defendants’ investigator also testified to observing loose asphalt near the curbing of the sidewalk in addition to.the difference in the level of the ground next to the curbing, and that defendant had used asphalt to build up the area where plaintiff had fallen. We find that any conflict in the testimony of the two expert witnesses could have been reasonably resolved in plaintiffs favor. There is sufficient evidence for the trier of fact to have concluded that the area in which plaintiff fell was unreasonably dangerous. Further, the fact that Sears had used asphalt to build up the area where plaintiff fell reveals that Sears knew or should have known that the ground was dangerously uneven. When a landowner/oecupier takes it upon himself to correct a possible defect, he must still act as a reasonable and prudent person in taking such remedial actions. There was sufficient evidence presented at trial for the jury to find the area in which plaintiff fell to be uneven, and that the discoloration of the area, along with the unevenness of the ground, made the area unreasonably dangerous. Further, there was sufficient testimony for the jury to conclude that Sears had knowledge of this dangerous condition.
We hold that the jury did not abuse its discretion in finding that plaintiff met her burden in proving that a defect existed in the area where she fell, that the defect created an unreasonably dangerous condition, that defendant knew or should have known of the defective condition, and that this defective condition caused plaintiff to slip and fall.
Further, we find that the jury did not abuse its discretion in awarding plaintiff damages in the amount of $66,800.00. In addition to the fractures of the left ankle in two places, plaintiff has incurred bone spurs and degenerative changes in the joints of the left ankle as a result of the fracture. Dr. Rosenkrantz, plaintiffs treating physician, testified that plaintiffs arthritic condition would continue to worsen and she may walk with a limp on occasion. The doctor assigned plaintiff a twenty per cent permanent physical impairment and loss of function of the left ankle and foot. Plaintiff was still under Dr. Ro-senkrantz’s care at the time of trial. Further, the doctor indicated that plaintiff would need to continue under her care for at least another year and that surgery would be necessary to remove the bone spurs.
Also, while there was no medical testimony concerning plaintiffs stomach ulcers, plaintiff testified that, as a result of the arthritis medication she was taking, she was being treated by a Dr. Chelsey Hines for stomach ulcers.
Where the plaintiff recovers an in globo award, it is impossible to discern which amounts the jury felt were appropriate for various elements of damages. Therefore, we must .consider all proven injuries to determine if, taken as a whole, the damage award is excessive. Faust v. Lombardo, 463 So.2d 745 (La.App. 4th Cir.1985). Before an appellate court can disturb a damage award, the record must clearly show that the trier of fact abused its discretion in making its award. Reck v. Stevens, 373 *501 So.2d 498 (La.1979); Burris v. Insured Lloyds, 417 So.2d 511 (La.App. 3rd Cir.1982); writ denied, 420 So.2d 982, 984 (La.1982). The reviewing court must look first to the individual circumstances of the present case. Thus, the initial inquiry must be directed at the particular injuries and their effect on the particular individual. Only after a determination of abuse has been made, then the appellate court may resort to prior awards in accordance with Coco v. Winston Industries, 341 So.2d 332 (La.1977), for the purpose of determining what would be an appropriate award for the present case. Reck v. Stevens, supra.
Reviewing the medical evidence presented, we do not find that the trial court abused its discretion in awarding plaintiff damages in the amount of $66,800.00. Plaintiff, sixty-nine years old at the time of trial, has incurred a twenty per cent permanent partial disability as a result of the accident. Also, the need for further medical treatment has been established. Considering, the injuries plaintiff sustained, we can not say that the damage award is either inadequate or excessive. The trial court had sufficient reason to believe that the said amount would adequately compensate plaintiff for her injuries.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.