**Jessie HERBERT, Plaintiff–Appellant**

v.

**WAL–MART STORES, INC.,**
**Defendant–Appellee.**

No. 89–3572.

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1990.

Rehearing and Rehearing En Banc
Denied Oct. 16, 1990.

Stafford, Mintz, Cellini & Lang, New Orleans, La., for defendant-appellee.

Before RUBIN, POLITZ and BARKSDALE, Circuit Judges.

PER CURIAM:

This is a typical diversity jurisdiction slip and fall case. The injured plaintiff prevailed but, unsatisfied with the award, appeals, arguing first that the district court erred in refusing to draw an adverse inference with respect to damages from Wal–Mart's failure to call an expert witness, and second that the court awarded him insufficient damages. Because we hold that the uncalled witness was available to both parties, and because we find that the district court did not err in calculating the damages due, we affirm.

On November 29, 1988, Jessie Herbert, a fifty-seven year old diesel mechanic, slipped in a pool of liquid fabric softener that had leaked onto the floor of the Wal–Mart store near his home in LaPlace, Louisiana. He injured his back and right elbow. After a one day bench trial, the district court found Wal–Mart liable under Louisiana law and awarded Herbert $11,130.43, comprising $8,000.00 for physical and mental pain and suffering, $2,130.43 for past medical expenses, $1,000 for lost wages, and nothing for future medical expenses.

I.

Herbert argues that the district court erred in refusing to draw an adverse inference from Wal–Mart's failure to call a witness purportedly under its control. An orthopedist consulted by Wal–Mart, Dr. Russell Grunsten, referred Herbert to Dr. Roy Staub for a full-body bone scan. Dr. Staub was not listed as a witness by Wal–Mart, nor did Dr. Grunsten's expert report mention either Dr. Staub or the bone scan. Accordingly, the district court forbade Dr. Grunsten to testify as to any opinions he might have formed based on Dr. Staub's

Daniel E. Becnel, Jr., Reserve, La., for plaintiff-appellant.

Sidney J. Hardy, Charles T. Weigel, Jr., Frederick Robert Campbell, McGlinchey,

report. At the close of the defendant's case, Herbert asked the court to draw an adverse inference from Wal–Mart's failure to call Dr. Staub. The court refused, finding that Herbert had failed to establish that Dr. Staub was either available to or under the control of Wal–Mart as required for such an inference under Louisiana law.[1]

The definitive statement of the uncalled-witness rule, sometimes referred to as the missing-witness rule, was issued by the Supreme Court in *Graves v. United States*[2] nearly a century ago: "The rule ... is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."[3] Even then, the rule was a venerable fixture in the common law courts. As described by Professor Wigmore, it was fashioned in the early eighteenth century[4] from the same notion that gave us the best evidence rule and the spoliation doctrine:[5]

> The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party.[6]

Through most of its history, the uncalled-witness rule has served two purposes. First, the rule discouraged parties from concealing evidence. The adverse inference drawn under the rule was intended to punish the party who had done so by depriving him of any benefit he might thus have gained.[7]

Second, the rule was an incentive for parties to put on relevant testimony.[8] When the rule was formulated, a litigant could not risk calling a potentially hostile or biased witness, even if he thought the witness (if truthful) would offer favorable testimony. The reason was the voucher rule: A party was deemed to "vouch" for the truthfulness of his witnesses, and therefore was prohibited from impeaching their testimony if it proved unfavorable.[9] Thus, the trier of fact would never hear the testimony of a witness identified with or "controlled"[10] by one of the parties unless that party put the witness on the stand. The uncalled-witness rule encouraged litigants to do so.

■ In the century that has passed since *Graves*, the federal courts have applied the uncalled-witness rule almost reflexively. It is commonly invoked in both criminal[11] and civil[12] cases, and in the latter without regard to whether the dispute is governed by

**1.** See *Veillon v. Sylvester*, 174 So.2d 189, 192 (La.Ct.App. 3d Cir.1965); G. Pugh, *Louisiana Evidence Law* 716–18 (1974).

**2.** 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021 (1893).

**3.** *Id.* at 121, 14 S.Ct. at 41.

**4.** See *Armory v. Delamirie*, 1 Strange 505, 93 Eng.Rep. 664 (1722); *Blatch v. Archer*, 1 Cowp. 63, 98 Eng.Rep. 969 (1774). *See generally,* Annotation, *Relationship Between Party and Witness as Giving Rise to or Affecting Presumption or Inference from Failure to Produce or Examine Witness,* 5 A.L.R.2d 893 (1949); Stier, *Revisiting the Missing Witness Inference,* 44 Md.L.Rev. 137, 142–43 & n. 22 (1985).

**5.** Stier, supra note 4, at 139–43.

**6.** 2 *Wigmore on Evidence* § 285 at 192 (Chadbourn ed. 1970); *see Burgess v. United States,* 440 F.2d 226, 236 (D.C.Cir.1970) (Robinson, J., concurring).

**7.** Stier, supra note 4, at 143.

**8.** Id. at 141, 143.

**9.** See E. Cleary, *McCormick on Evidence* § 38 (1984); 3A *Wigmore on Evidence* §§ 896–899 (Chadbourn ed. 1970).

**10.** For a discussion of the circumstances in which a particular witness has been deemed "controlled" by a party, *see* Annotation, supra note 4.

**11.** *E.g., United States v. Charles,* 738 F.2d 686, 698 (5th Cir.1984).

**12.** *E.g., Jones v. Otis Elevator Co.,* 861 F.2d 655, 658–60 (11th Cir.1988).

federal[13] or state[14] law. Our research has failed to discover a case in which the continuing vitality of the doctrine has been subjected to careful judicial reflection, despite the enormous changes wrought by the adoption of the Federal Rules of Evidence, and before that by the adoption of the Federal Rules of Civil Procedure. After giving the issue due consideration, we conclude that the uncalled-witness rule has no place in federal trials conducted under the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

Whether state or federal law governs the applicability of the uncalled-witness rule in a diversity case has never been decided. At least two Courts of Appeals have expressly reserved judgment on the issue;[15] others have applied either state[16] or federal[17] law without discussing the matter. Both the parties and the district court in this case assumed that state law governed. We disagree.

■ First, we note that Federal Rule of Evidence 302 does not require that we apply state law. Rule 302[18] applies only to presumptions. While often labelled as such, there is no dispute that the uncalled-witness rule does not create a true "presumption," but merely permits an infer-

ence.[19] As such, it falls outside the scope of Rule 302.[20]

■ Second, application of state law is not required by the *Erie* doctrine.[21] The *Erie* doctrine requires federal courts to apply substantive state law when adjudicating state law claims. Procedural matters, however, are governed by federal law.[22] Whether a particular provision is substantive or procedural for *Erie* purposes is determined by looking to the "twin aims" of the *Erie* doctrine: the discouragement of forum shopping and the avoidance of the inequitable administration of the laws.[23]

The applicability of the uncalled-witness rule is a procedural matter, hence governed by federal law. With respect to forum shopping, it is difficult to conceive of a situation in which the availability of the rule would affect the choice to sue in or remove an action to federal court, as the party invoking the rule will know only well into the course of the litigation—often not until the close of her opponent's case—that a material witness has not been called. With respect to *Erie*'s second aim, the rule is not "bound up with the definition of the rights and obligations of the parties" under state law[24] so that denying the inference would result in different treatment between those parties suing in state court

---

13. *E.g., In the Matter of Evangeline Refining Co.,* 890 F.2d 1312, 1321 (5th Cir.1989) (bankruptcy); *United Overseas Export Lines, Inc. v. Medluck Compania Maviera,* 785 F.2d 1320, 1325–26 (5th Cir.1986) (admiralty); *Labit v. Santa Fe Marine, Inc.,* 526 F.2d 961, 962–63 (5th Cir.) (Jones Act), *cert. denied,* 429 U.S. 827, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976).

14. *E.g., Bunch v. Walter,* 673 F.2d 127, 132 (5th Cir.1982).

15. *See Wilson v. Merrell Dow Pharmaceuticals,* 893 F.2d 1149, 1151 n. 3 (10th Cir.1990); *Otis Elevator,* 861 F.2d at 659 n. 4 (11th Cir.1988).

16. *E.g., Campbell by Campbell v. Coleman Co., Inc.,* 786 F.2d 892, 897–98 (8th Cir.1986) (applying Missouri law).

17. *E.g., Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 719 F.2d 1335, 1353 (7th Cir.1983).

18. Rule 302 provides:
    In civil actions and proceedings, the effect of a presumption respecting a fact which is an element of a claim or defense as to which

State law supplies the rule of decision is determined in accordance with State law.

19. *Burgess v. United States,* 440 F.2d 226, 233 n. 10 (D.C.Cir.1970); E. Cleary, *McCormick on Evidence* § 272 at 806–07 (1984); Stier, supra note 4, at 148 & n. 50.

20. *See* 21 C. Wright & K. Graham, *Federal Practice & Procedure* § 5124 at 587.

21. *Erie R.R. Co. v. Tomkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

22. *Hanna v. Plumer,* 380 U.S. 460, 465, 85 S.Ct. 1136, 1140, 14 L.Ed.2d 8 (1965).

23. *Id.* at 468, 85 S.Ct. at 1142; *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1157 (5th Cir.1987) (en banc), *vacated on other grounds,* —— U.S. ——, 109 S.Ct. 1928, 104 L.Ed.2d 400, *reinstated in relevant part,* 883 F.2d 17 (5th Cir.1989) (en banc).

24. *Byrd v. Blue Ridge Electrical Corp.,* 356 U.S. 525, 536, 78 S.Ct. 893, 900, 2 L.Ed.2d 953 (1958).

**1048**

and those suing in federal court on the same cause of action.[25] In fact, the uncalled-witness rule bears no more relation to the elements of a state law claim or defense than any other evidence from which the fact finder may infer an evidentiary or ultimate fact. The admissibility of such other proof is governed by federal law.[26] At the same time, the federal courts have a keen interest in "control[ling] the fact-finding processes by which the rights of litigants are determined in order to preserve the 'essential character' of the federal system."[27] The applicability of the uncalled-witness rule, therefore, is properly classified as procedural. Federal law governs.

One major change effected by the Federal Rules of Evidence is embodied in Rule 607, which provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." The intent of Rule 607 was to abolish the voucher rule,[28] thereby removing a major impediment to calling a material witness who may be identified with an adverse party. Under the Federal Rules, witnesses are not "controlled" by either party. Any competent witness whose testimony is not privileged may be called, interrogated and impeached by any party to the litigation. The Federal Rules of Evidence thus enable a litigant to introduce by live testimony evidence that, under the voucher and uncalled-witness rules, might not have been adduced.

It is not difficult to demonstrate how the evidentiary scheme created by the Federal Rules of Evidence, as complemented by the Federal Rules of Civil Procedure, renders the uncalled-witness rule an anachronism. A litigant may use modern discovery procedures to ascertain the identity and proposed testimony of witnesses identified with her opponent.[29] If the district court finds that a party is concealing the identity and location of persons with knowledge of discoverable matter, the court may impose an appropriate penalty.[30] If a litigant wishes to call a hostile witness but the witness is unwilling to testify, the litigant may resort to compulsory process.[31] When the litigant has the hostile witness on the stand, she may use leading questions to interrogate the witness,[32] and if necessary impeach the witness under Rule 607 by any of the standard means, including use of the witness's prior inconsistent statements.[33]

In short, there is no justification for perpetuating the uncalled-witness rule in civil cases. Accordingly, if unconstrained by precedent, we would hold that in trials conducted under the Federal Rules of Evidence and the Federal Rules of Civil Procedure,[34] the trier of fact may draw no inference from a party's mere failure to call a witness who is susceptible to subpoena by either party, and that it is inappropriate for counsel to argue to the fact finder that such an inference is permissible. We express no opinion as to whether such an inference may be drawn in federal criminal trials or in federal civil actions not tried under either the Federal Rules of Evidence or the Federal Rules of Civil Procedure.

Nonetheless, the rule has so frequently been either applied or referred to in dicta in this circuit since, as well as before, the adoption of the Federal Rules of Evidence,

**25.** *Cf. Conway v. Chemical Leaman Tank Lines, Inc.,* 540 F.2d 837, 839 (5th Cir.1976) (finding state evidentiary rule "so bound up with state substantive law" as to require application in federal court).

**26.** *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 280 (5th Cir.), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987).

**27.** *Boeing Co. v. Shipman,* 411 F.2d 365, 369–70 (5th Cir.1969) (en banc) (quoted in *In re Air Crash Disaster,* 821 F.2d at 1158–59).

**28.** *Chambers v. Mississippi,* 410 U.S. 284, 296 n. 9, 93 S.Ct. 1038, 1046 n. 9, 35 L.Ed.2d 297 (1973); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 607[01] (1988).

**29.** Fed.R.Civ.P. 26(b)(1). *See* E. Cleary, *McCormick on Evidence* § 272 & n. 17.

**30.** Fed.R.Civ.P. 37.

**31.** Fed.R.Civ.P. 45(e).

**32.** Fed.R.Evid. 611(c).

**33.** *See* Fed.R.Evid. 607; Fed.R.Civ.P. 32(a)(1).

**34.** *See* Fed.R.Evid. 1101; Fed.R.Civ.P. 81.

that it might be considered the law of the circuit. As a panel, therefore, we do not undertake to overrule the cases that rely on the rule, but merely call its archaism to the attention of the court for possible consideration en banc.

■ Applying the rule in its federal form, however, gives no comfort to Herbert. Dr. Staub practices in New Orleans, where the court sits. He is engaged in an independent professional practice, neither employed nor controlled by Wal–Mart. He was not a person "peculiarly within the power [of Wal–Mart] to produce," [35] but would have been as responsive to a subpoena from Herbert as to one from Wal–Mart. We find no reason, therefore, to infer that his testimony would have been adverse to Wal–Mart.

## II.

Herbert also argues that the damages awarded by the district court were insufficient. The trial judge's assessment of damages is a finding of fact; as such, it will be overturned by this court only if clearly erroneous.[36] The propriety of a given award is determined by the facts of the case before the court, not by comparison with the damages awarded in other cases.[37] While the damages awarded Herbert by the district court may have been low, they were by no means clearly erroneous.

### A. *Award of $8,000 for Pain and Suffering*

■ Herbert argues that the district court awarded only $8,000 for physical and mental pain and suffering because the district court erroneously gave greater weight to the testimony of Wal–Mart's expert orthopedic surgeon, Dr. Russell Grunsten, who examined Herbert on one occasion nine months after the accident, than it gave

to the testimony of Herbert's treating physician, Dr. Christy Montegut, a family practitioner. While this may be a colorable argument under Louisiana law,[38] upon which Herbert relies, it has no foundation in federal law. In a federal court, even when that court applies substantive state law, the trier of fact is the sole arbiter of the comparative weight to be given the evidence.[39]

■ The record in this case amply supports the district court's conclusion that Herbert's pain and suffering were in no way severe. Dr. Montegut offered little in the way of objective pathology to support his opinions: his objective findings were limited to muscle spasms in the lumbar region, noted up to five weeks after the accident but not thereafter, and X-rays taken five months after the accident that Dr. Montegut read as indicating lumbar strain superimposed over pre-existing arthritis. In fact, Dr. Montegut stated that he had originally expected Herbert to be fully recovered within two to four weeks, and that he had advised Herbert to return to work several times, but that Herbert had refused, saying he did not feel like it.

Dr. Grunsten, a certified orthopedic surgeon, could find no objective evidence indicating any serious or lasting injury. According to him, Herbert's X-rays showed that his back was in good condition for a man fifty-seven years old. Dr. Grunsten also testified that Herbert had a bone spur in his right elbow, not a bone chip as stated by Dr. Montegut, and that the muscle mass of Herbert's right arm indicated that he had been using that arm "a great deal" in the months subsequent to the accident. Finally, Herbert's behavior while Dr. Grunsten examined him led Dr. Grunsten to believe that Herbert was exaggerating his symptoms.

**35.** *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893).

**36.** *Hale v. Fish,* 899 F.2d 390, 403 (5th Cir.1990); *Johnson v. Offshore Express, Inc.,* 845 F.2d 1347, 1356 (1988).

**37.** *Hale,* 899 F.2d at 403; *Johnson,* 845 F.2d at 1356.

**38.** *Compare Johnson v. R.P. Farnsworth & Co.,* 186 So.2d 405, 409 (La.Ct.App. 1st Cir.1966) *with Bruno v. Security Gen. Life Ins. Co.,* 522 So.2d 1242, 1245 (La.Ct.App. 4th Cir.1988).

**39.** *Boeing Co. v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969).

Given this evidence and the district court's conclusion after observing both expert witnesses that Dr. Grunsten's testimony was entitled to greater weight, we affirm the district court's award of $8,000 for pain and suffering.

### B. *Award of $1,000 for Lost Wages*

 Similarly, we conclude that the district court's award of $1,000 for lost wages should not be overturned. Before 1987, Herbert worked as a diesel mechanic for Boyce Industries for thirty-two years. In 1982 he had earned $31,896.75, and in 1984 he had earned $27,632.97. (He submitted no testimony concerning his earnings in 1983, 1985 or 1986.) In 1987, however, Boyce Industries was acquired by another corporation, and Herbert was laid off. He earned only $1,928.00 that year.

After drawing unemployment compensation for some months, Herbert went to work for Cashio Equipment Company, which was owned and operated by another former Boyce employee. Herbert testified that he earned $8.50 per hour at first, but his wage was reduced to $7.50 per hour soon thereafter. He also testified that he worked full forty hour weeks, and that he sometimes worked overtime. However, the W–2 form Herbert submitted showed that he earned only $5,917.51 for the first eleven months of 1988; there was no evidence that Herbert received any other wages or unemployment compensation during that period. Cashio Equipment went bankrupt and ceased operations late in 1988.

Based in large part on the medical evidence noted above, the district court concluded that Herbert suffered damages from lost wages due to the accident for only two months. That conclusion has support in the record. The district court also concluded that the appropriate basis for calculating the wages lost was to take two-elevenths of Herbert's 1988 wages and round that sum down to account for Herbert's ever-decreasing pay. Given Herbert's earnings record over the previous two years and the absence of any proof that Herbert would have earned more in the two months immediately after the acci-

dent, the record is insufficient to warrant our substituting our judgment for the district court's.

### C. *No Award for Future Medical Expenses*

 Herbert's final argument is that the district court erred in refusing to award damages for future medical expenses despite its finding that Herbert "did suffer and is continuing to suffer some injuries from his accident." The district court also found, however, that Herbert had failed to prove that he needed further medical care. The district court's assessment of the plaintiff's credibility and the comparative weight given Dr. Montegut's testimony adequately support the court's conclusion that Herbert failed to carry his burden of proof.

For the reasons stated above, the judgment of the district court is AFFIRMED.