Glenn REPECKI and Elizabeth
Repecki, Plaintiffs,

v.

HOME DEPOT USA, d/b/a Home
Depot, Defendant.

No. CV 96–0478 (ADS).

United States District Court,
E.D. New York.

Oct. 18, 1996.

Buttafuoco & Associates (James S. McCarthy, of counsel), Mineola, New York, for Plaintiffs.

Simmons, Jannace & Stagg, L.L.P. (Steven D. Jannace, Kenneth Aneser, Kevin P. Simmons, of counsel), Mineola, New York, for Defendant.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This is an action to recover damages for personal injuries allegedly resulting from the negligence of the defendant with regard to the storing and stacking of lumber at the defendant's Home Depot store located in Valley Stream, New York.

### I. *FINDINGS OF FACT AFTER TRIAL—AS TO LIABILITY*

On June 17, 1995, the plaintiff Glenn Repecki ("the plaintiff" or "Repecki") was a 31 year old self-employed home improvement contractor. Repecki was in partnership with one Philip Senra, who was only able to perform part-time services in the business because he was a full time New York City Firefighter. Repecki was shopping at the Valley Stream store owned by the defendant Home Depot U.S.A. Inc. ("Home Depot" or "the defendant"). He was familiar with all the Long Island Home Depot stores and had been in the Valley Stream store "at least 100 times."

On this occasion, on Saturday, June 17, 1995, Repecki arrived at the Valley Stream store about 10:00 a.m. accompanied by his customer Arnold Miot. The plaintiff was going to do a home improvement job at Miot's home in North Woodmere and was purchasing materials at Home Depot. When he and Miot arrived at the store, Repecki got a lumber cart to hold his purchases. He

selected some articles including a Stanley exterior door, some mouldings, locks and shims.

The two men then walked to the Dimension Lumber Mouldings Department to purchase some lumber boards. In that area, Repecki selected some mouldings and three pieces of ¾" board and two pieces of ⅝" board. After he placed the second piece of ⅝" board in the cart he turned and walked toward a shelf. When Repecki was within a foot of the shelf and to the left of the ⅝" board shelf, a board dropped off the shelf above and struck him on the left big toe. The board that struck the plaintiff was 8 inches wide, 1 inch thick, and approximately 8 feet long.

This piece of lumber was stored in a bin which was approximately four feet above the floor. The lumber was prevented from falling from the bin by a 1½" toeboard which stretched horizontally across the front of the bin. This bin was "fairly full" and the boards were in the bin in a "disheveled manner." Prior to the occurrence, the plaintiff never touched any of the boards in the bin. However, he did see boards lying on top of the toeboard prior to the occurrence.

The Court finds that the plaintiff Glenn Repecki was a candid and credible witness and accepts his version of how this accident occurred.

Photographs were introduced by the plaintiff which purported to show the condition of the boards laying on top of the toeboard, as that condition that existed at the time of the occurrence. These photos show that the lumber boards resting on the toeboard represented a potentially dangerous condition. (See Plaintiffs' Exhibits 1, 2 and 3) (See Appendix A, B and C).

■ Contrary to the defendant's contention, expert testimony is not necessary to establish that the design of the bin and storage of the lumber in it, presented a potentially dangerous condition. Here, given the testimony of the witnesses regarding the condition of the bins, the distance between the bin and the floor and the common sense, reasonable foreseeability that heavy lumber boards should not be placed in such precarious locations, especially in a busy self-service

store, expert testimony is unnecessary to establish the finding of a dangerous condition. See, for example, *Fortunato v. Dover Union Free School District*, —— A.D.2d ——, 638 N.Y.S.2d 727 (2d Dep't 1996).

The Court finds that most, if not all, of the Home Depot stores on Long Island place the long heavy lumber boards in bins at or near the level of the floor. It was stipulated by the parties that in five of the stores such lumber is stacked either on the floor or six inches to one foot above the floor. Photographs of the Northport, Westbury, Freeport, Farmingdale and East Meadow stores with such low-level stacking were introduced. (See Plaintiffs' Exhs. 9, 10, 11, 12 and 13) (See Appendix D, E, F, G and H). The Court notes that the defendant did not introduce any photographs of any other Home Depot stores which also had the "high level" lumber bins. Nor did the defendant produce any witness who was working at the Valley Stream store on the date of the accident.

Much of the plaintiff's testimony with regard to the storing of heavy lumber in bins above the floor was confirmed by Paul A. Feddern, a loss prevention supervisor with Home Depot at the Valley Stream store. His duties included protecting the Home Depot assets, assuring a safe place for customers to shop and investigating accidents. He worked at five other Home Depot stores. Feddern testified that some of the stores stacked the lumber vertically in bins 3 to 3½ feet above the floor with a two inch toeboard in front of the bin for safety purposes. However, the defendant produced no photographs of such stores containing high-level lumber bins.

■ Significantly, Feddern testified that he occasionally saw lumber stacked on top of the safety toeboards in these higher bins. He saw this condition in the Valley Stream store. When he saw this condition, he would push the lumber back away from the toeboard. Home Depot employees would "straighten out" the lumber several times a day. Also, as stated by Feddern, Home Depot was a "self-service" warehouse and the customers were encouraged to remove the lumber themselves.

The Court finds that Home Depot had notice of this potentially dangerous condition in the Valley Stream store, namely, large lumber boards stacked vertically in bins 3 to 4 feet above the floor and allowed such boards to be and remain dangerously perched right on the toeboards intended to prevent them from slipping off.

While Arnold Miot may have been an eyewitness to this incident, he was not called as a witness. In his closing arguments, the defendant's trial counsel asked for an unfavorable inference as to the plaintiff with regard to this missing witness. The Court disagrees. Generally, there is no duty on the part of either party to call any particular person as a witness. However, if a witness is within the control of a party and that witness could have given material non-cumulative evidence, an unfavorable inference can be drawn. *Chandler v. Flynn*, 111 A.D.2d 300, 489 N.Y.S.2d 289, *app. dism.* 67 N.Y.2d 647, 499 N.Y.S.2d 1032, 490 N.E.2d 559 (1986); *Zeeck v. Melina Taxi Co.*, 177 A.D.2d 692, 576 N.Y.S.2d 878 (2d Dep't 1991). Despite the dilution of the "missing witness rule" in some Federal Courts (*see, e.g., Herbert v. Wal–Mart Stores, Inc.*, 911 F.2d 1044 (5th Cir.1990)), the rule is still in force in the New York State Courts. In this case, the Court finds that witness Miot is equally available or unavailable to both sides, and the Court declines to draw an unfavorable inference against either side. *See, e.g., Felice v. Long Island Railroad Co.*, 426 F.2d 192 (2d Cir.) *cert. den.* 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1970) *cf. Gray v. Great American Recreation Association, Inc.* 970 F.2d 1081 (2d Cir.1992).

## II. THE LAW AS TO LIABILITY

A storekeeper operating a retail store may be liable where a person sustains an injury as a result of the dangerous condition of an area in the store. *Higgins v. Ruppert*, 124 App.Div. 530, 108 N.Y.S. 919 (2d Dep't 1908) ("one who invites the public to his place of business is under the duty of reasonable care to make his place safe to those who come"). Further a retail storekeeper is required to use reasonable care to prevent objects for which he is responsible from falling and causing injury to persons lawfully in the vicinity. Particularly in self-service stores, it is reasonably foreseeable that material stored and piled on high shelves may fall, striking a customer. *See, e.g., Mandelino v. Great Atlantic & Pacific Tea Co.*, 276 App.Div. 850, 93 N.Y.S.2d 175 (2d Dep't 1949).

The doctrine of *res ipsa loquitur* is not applicable in this factual scenario, because the defendant did not have "exclusive control" of the lumber boards in the bin. The situation in this case is to be contrasted with the facts in *Ciciarelli v. Ames Department Stores, Inc.*, 162 A.D.2d 996, 557 N.Y.S.2d 787 (4th Dep't 1990) where trays located on a display shelf which was not used by customers, fell on the plaintiff. *See also* the concurring opinion in *Perito v. Sunrise Supermarket Corp.*, 33 Misc.2d 627, 229 N.Y.S.2d 667 (App.Term 2d Dep't 1961) (where beer bottles fell from shelf cutting customer's leg, there was a probability the merchandise had been handled by the customers) and in the dissenting opinion in *Robinson v. Atlantic & Pacific Tea Co.*, 184 Misc. 571, 54 N.Y.S.2d 42 (App.Term 1st Dep't 1945) (In a case where a customer is struck by a can which fell from a shelf, actual or constructive notice would be required).

Another instructive case involving falling lumber is *Nigro v. Willson*, 50 Misc. 656, 99 N.Y.S. 344 (Sup.Ct.App. Term 1906). The plaintiff was removing lumber from a pile in the defendant's yard and loading it on a truck. While doing this work a piece of lumber from another pile of lumber a short distance away fell and struck the plaintiff. The proof showed that this was the usual method of piling lumber and that the pile was "in proper shape," unlike the storage of lumber in the instant case. In *Nigro*, there was no evidence of improper piling of the lumber. Here, the plaintiff proved, by a preponderance of the evidence, that the lumber was allowed to be placed in a dangerous and precarious manner, leading to the fall of the board which struck the plaintiff.

Nor is this a case in which the "open and obvious" defense is a bar to the plaintiffs' recovery. Unlike the situations where the

plaintiff struck his head on a fixed hook in a dressing room (*Binensztok v. Marshall Stores*, —— A.D.2d ——, 644 N.Y.S.2d 333 (2d Dep't 1996)), or where the plaintiff stepped on a nail protruding from a floor board on a pile of debris (*Pellicane v. Lambda Chi Alpha Fraternity, Inc.*, —— A.D.2d ——, 644 N.Y.S.2d 769 (2d Dep't 1996)), here the dangerous condition, while observable, was a flexible, evolving situation in a busy self-service store, resulting in a falling lumber board from a location made dangerous by the defendant's acts of commission and omission.

In this case, the dangerous condition, precipitating the fall from a height of a heavy lumber board, presented an unreasonable risk of harm. *Kinfe v. Port Authority of New York, New Jersey*, —— A.D.2d ——, 648 N.Y.S.2d 322 (2d Dep't 1996), *cf. Naim v. Schwartz Brothers Memorial Chapels, Inc.*, —— A.D.2d ——, 648 N.Y.S.2d 136 (2d Dep't 1996).

Under the circumstances in this case, in order to impose liability upon the defendant, there must be evidence tending to show either that it "created the dangerous condition which caused the accident or that it had actual or constructive notice of that condition." *Payne v. Big V Supermarkets, Inc.*, 140 A.D.2d 422, 528 N.Y.S.2d 123 (2d Dep't 1988). *See also, Eddy v. Tops Friendly Markets*, 91 A.D.2d 1203, 459 N.Y.S.2d 196 (4th Dep't 1983), *aff'd*, 59 N.Y.2d 692, 463 N.Y.S.2d 437, 450 N.E.2d 243 (1983). Here, the plaintiff proved, by a preponderance of the evidence, that the defendant created a condition setting the stage for a potentially dangerous and reasonably foreseeable situation by placing the large lumber boards in a vertical condition in a bin 3½ feet above the floor, rather than at ground level. In addition, the plaintiff further proved that the defendant had actual knowledge that, on several occasions, the lumber boards were in a dangerous condition, namely, placed on top of the toeboard, in a precarious position. Accordingly, the plaintiff has established, by a preponderance of the evidence, that the defendant Home Depot was negligent with regard to the placing and storing of the lumber boards at issue, which negligence was a prox-imate cause of injury and damage to the plaintiff.

### III. *AS TO CONTRIBUTORY NEGLIGENCE*

 With regard to the issue of contributory negligence on the part of the plaintiff he testified that on the morning of the occurrence he noticed the boards on the edge of the toeboard. He stated that after he saw the lumber so precariously placed, he did not push the boards back into the bin. Repecki also testified that he saw boards similarly located on toeboards of other shelves on other occasions. He stated that he did push the boards back in the bin on prior occasions so that he could select boards in the particular bin. Repecki testified that at the time of this occurrence there were a number of boards on the toeboard. This was an obviously potentially dangerous condition to the customers traversing the area. Repecki conceded that on the day of his accident, he could have pushed the boards back.

 A customer in a store is bound to use reasonable care for his own safety, particularly when he becomes aware of a dangerous condition existing which requires him to use this care. *Ford v. John Wanamaker*, 165 App.Div. 284, 150 N.Y.S. 795 (1st Dep't 1914). The Court finds that, a reasonably prudent customer would have been more careful in walking near the bin knowing that heavy lumber boards were hazardously placed. This failure to exercise reasonable care constituted negligence on his part. Weighing the far greater negligence by the owner of the store who created this precarious storage condition, placed the boards in the bin and failed to maintain the bin properly, the Court apportions the negligence of the defendant Home Depot to be 85% and the negligence of the plaintiff to be 15%.

### IV. *INJURIES AND DAMAGES*

 The Court finds that a piece of lumber 8 inches wide 1¼ inches thick and 8 feet long, falling from a height of approximately 4 feet, landed on the plaintiff's left big toe. The plaintiff sustained a crushing injury to the left big toe (*see* photograph Plaintiffs' Exh. 4), requiring medical attention at

Huntington Hospital and by his physician Dr. Kirtzner, who referred the plaintiff to an orthopedic surgeon, Dr. Thaddeus Spak.

Dr. Spak testified that the plaintiff sustained a "very" comminuted fracture of the distal phalanx of the left big toe, with 15° to 20° backward displacement. He also stated that this trauma aggravated a condition of pre-existing arthritis in the metatorsophlangeal joint of the left big toe. As a result, according to Dr. Spak, the plaintiff will have permanent pain and stiffness in both joints of the left big toe, requiring the use of a "stiff shoe" for the rest of his life.

These traumatic injuries were essentially confirmed by the defendant's examining orthopedic surgeon, Dr. Jerrold Gorski. He agreed that the plaintiff sustained the comminuted fractures in the distal phalanx of the left great toe as shown in the x-rays (Plaintiffs' Exhs. 14A, 14B and 14C). Dr. Gorski also agreed that the plaintiff's pre-existing arthritic condition in the left big toe was aggravated by the trauma sustained by the plaintiff in this occurrence.

Reviewing all of the evidence in this case the Court makes the following awards:

For the injuries and pain and suffering sustained by the plaintiff Glenn Repecki from June 17, 1995 to the present date, the Court awards to the plaintiff the sum of $10,000.

For the stiffness and continuing aggravation of the arthritic condition in the toe, in the future, a period, according to the life tables of approximately 43 years, this Court awards to the plaintiff Glenn Repecki the sum of $25,000.

▆▆▆▆ In addition to the injury to his left big toe, the plaintiff was out of work for ten weeks. The Court finds that during that period, the plaintiff had two contracts to do home improvement work, in which he would have earned the net sum of $3800, as his 50% share of the net profits.

Accordingly, the Court awards to the plaintiff Glenn Repecki the total sum of $38,800, less the sum of $5,820, representing the 15% contributory negligence finding; for a net award to the plaintiff in the sum of $32,980.00.

The Clerk is directed to enter judgment in favor of the plaintiff Glenn Repecki against the defendant Home Depot, U.S.A. d/b/a Home Depot in the sum of $32,980.00.

APPENDIX A

APPENDIX B

APPENDIX C

APPENDIX D

134

APPENDIX E

APPENDIX F

APPENDIX G

APPENDIX H

