# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP1956 |
| COMPLETE TITLE: | James E. Kochanski and Cynthia Kochanski, |
| | Plaintiffs-Respondents-Petitioners, |
| | Blue Cross Blue Shield of Wisconsin and Kathleen Sebelius, |
| | Secretary of the United States Department of Health and |
| | Human Services, |
| | Involuntary-Plaintiffs, |
| | v. |
| | Speedway SuperAmerica, LLC, |
| | Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 344 Wis. 2d 519, 822 N.W.2d 736
(Ct. App. 2012 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 17, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 4, 2013 |
| | |
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | John Siefert |
| | |
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | BRADLEY, J., ABRAHAMSON, C.J., dissent. (Opinion filed.) |
| | PROSSER, J., dissents. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondents-petitioners, there were briefs by *Jay R. Starrett*, *Lisa M. Lawless*, *Thomas Gonzalez*, *Erin M. Keesecker*, and *Whyte Hirschboeck Dudek S.C.*, Milwaukee, and oral argument by *Ross Anderson*.

For the defendant-appellant, there was a brief by *Donald H. Piper*, *Patrick A. O'Neil*, and *Piper & Schmidt*, Milwaukee, and oral argument by *Patrick A. O'Neil*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP1956
(L.C. No. 2009CV12191)

STATE OF WISCONSIN        :       IN SUPREME COURT

James E. Kochanski and Cynthia Kochanski,

      Plaintiffs-Respondents-Petitioners,

Blue Cross Blue Shield of Wisconsin and
Kathleen Sebelius, Secretary of the United
States Department of Health and Human Services,

      Involuntary-Plaintiffs,

    v.

Speedway SuperAmerica, LLC,

      Defendant-Appellant.

**FILED**

**JUL 17, 2014**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] reversing the circuit court's order[2] affirming the jury's verdict, which found Speedway SuperAmerica, LLC (Speedway) liable for injuries James Kochanski sustained

---

[1] Kochanski v. Speedway SuperAmerica, LLC, No. 2011AP1956, unpublished slip op. (Wis. Ct. App. Sept. 18, 2012).

[2] The Honorable Judge John Siefert of Milwaukee County presided.

when he fell outside one of Speedway's stores. Speedway appealed, arguing that the circuit court erroneously gave the absent witness instruction, that the verdict should be reversed because it is contrary to the greater weight of the credible evidence, and that a new trial should be granted in the interest of justice. The court of appeals reversed on the jury instruction issue and remanded for a new trial. It did not reach Speedway's other two arguments.

¶2 We affirm the decision of the court of appeals. The circuit court's decision to give the absent witness instruction was an erroneous exercise of discretion because there was no evidence in the record that the absent witnesses, former Speedway employees who had been on duty at the time of the accident, were material and within Speedway's control or that it was more natural for Speedway, rather than Kochanski, to call them. Furthermore, Speedway's decision not to call the former employees did not reasonably lead to the conclusion that it was unwilling to allow the jury to have "the full truth." Ballard v. Lumbermens Mut. Cas. Co., 33 Wis. 2d 601, 616, 148 N.W.2d 65 (1967). And finally, the instruction was prejudicial because without drawing a negative inference about Speedway's snow removal methods and processes from Speedway's decision not to call the former employees, the jury would not have found that Kochanski satisfied the notice element of his safe-place claim that was necessary to liability. Accordingly, we affirm the court of appeals' decision and remand for a new trial.

2

## I.   BACKGROUND

¶3   On February 6, 2007, Kochanski filled his car with gas at a Speedway convenience store in Milwaukee, Wisconsin. Between one half and two inches of snow had fallen that morning. When the machine at the pump would not process his credit card, Kochanski decided to pay for his purchase inside.   As he approached the front door of the store, he noticed a yellow curb on either side of the door and a patch of snow in the middle, which he assumed was a curb ramp to provide wheelchair access. The curb ramp was actually located four or five feet to his left.   Having misjudged the ramp location, Kochanski either slipped or tripped on the curb, breaking his arm and injuring his wrist.   He brought this suit in which he alleges that Speedway violated both its common law duty of care and the safe-place statute, Wis. Stat. § 101.11 (2009-10).[3]

¶4   At a May 2011 jury trial, Kochanski proffered the following evidence in support of his claims:   (1) his own testimony regarding the circumstances of the fall; (2) video footage from the store's surveillance camera that captured the fall; (3) deposition testimony of his treating physician regarding his injuries; (4) testimony of his wife regarding the impact the accident had on her and her husband's lives; and (5) Speedway's interrogatory responses that identified five former

---

[3] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

employees who were on duty at the time of the accident and provided their last known addresses.

¶5    In defending against the imposition of liability, Speedway relied on the video that captured the fall. Speedway explained to the jury that it had been unsuccessful in its attempt to locate the manager on duty at the time of the accident, but no testimony was necessary because the video was sufficient to prove that it was not liable.

¶6    Based on Speedway's decision not to call any former employees as witnesses, Kochanski requested, and the court gave, the absent witness instruction, which provides:

> If a party fails to call a material witness within [its] control, or whom it would be more natural for that party to call than the opposing party, and the party fails to give a satisfactory explanation for not calling the witness, [the jury] may infer that the evidence which the witness would give would be unfavorable to the party who failed to call the witness.

Wis JI——Civil 410. The court reasoned that the jury had a right to know about Speedway's snow removal methods and processes. It explained that since Speedway did not call former or current employees who would have known about those methods and processes and the video did not show whether the premises was salted before the accident, the instruction was proper.

¶7    During closing arguments, Kochanski's attorney capitalized on the instruction, arguing as follows:

> The law says——and you've taken an oath to follow the law——that if there is a witness that would have been natural for SuperAmerica to call to explain to you what was done on this day, you can infer that had

4

they called that witness, they would have gotten some unfavorable testimony.

Why didn't [Speedway] call anybody? What would that unfavorable testimony have been? Other evidence that's missing in this case. . . .

Not a single document, and not [a] single witness. It makes you wonder what's going on[.] What is it that's being decided at the highest levels of SuperAmerica? How will they defend these cases? Why don't you get to hear the whole story?

¶8 The jury returned a verdict in favor of Kochanski and awarded the plaintiffs $317,545.58 in damages, which represented Kochanski's medical expenses and pain and suffering, as well as Cynthia Kochanski's loss of society and companionship. The circuit court affirmed the verdict and denied Speedway's request for a new trial.

¶9 On appeal, Speedway argued that the circuit court erroneously gave the absent witness instruction. Specifically, it said that the missing witnesses were not material because their testimony would have been cumulative of the video and that it is not necessarily more natural for defendant-employer to call former employees. The court of appeals agreed[4] with Speedway that the record lacked the facts necessary to give the absent witness instruction. We granted review and now affirm the court of appeals.

---

[4] Judge Fine filed a dissenting opinion in which he concluded that the instruction was appropriate because Speedway did not prove "via evidence" that the former employees were not within its control or that it had a satisfactory reason for not calling them.

## II. DISCUSSION

### A. Standard of Review

¶10 A circuit court has broad discretion to instruct a jury. Nommensen v. Am. Cont'l Ins. Co., 2001 WI 112, ¶50, 246 Wis. 2d 132, 629 N.W.2d 301. This does not mean, however, that a jury instruction is insulated from review. Facts of record must support the instruction and the instruction must correctly state the law. Id. We independently review whether these two criteria are met. State v. Fonte, 2005 WI 77, ¶9, 281 Wis. 2d 654, 698 N.W.2d 594.

¶11 The correctness of the jury instruction affects the validity of a jury's verdict. State v. Dodson, 219 Wis. 2d 65, 87, 580 N.W.2d 181 (1998). However, an "erroneous jury instruction warrants reversal and a new trial only if the error was prejudicial." Fischer v. Ganju, 168 Wis. 2d 834, 849, 485 N.W.2d 10 (1992). An error is prejudicial when it probably misled the jury. Id. at 850. Put another way, "an error relating to the giving or refusing to give an instruction is not prejudicial if it appears that the result would not be different had the error not occurred." Lutz v. Shelby Mut. Ins. Co., 70 Wis. 2d 743, 751, 235 N.W.2d 426 (1975).

### B. Absent Witness Instruction

¶12 Over a century ago, the United States Supreme Court issued a definitive statement of the absent witness rule: "[I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if

produced, would be unfavorable." Graves v. United States, 150 U.S. 118, 121 (1893); Herbert v. Wal-Mart Stores, Inc., 911 F.2d 1044, 1046 (5th Cir. 1990). As with the best evidence rule[5] and the spoliation doctrine,[6] the absent witness rule is based on the notion that:

> [t]he failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party.

2 John Henry Wigmore, Evidence in Trials at Common Law § 285, at 192 (James H. Chadbourn rev. 1979); Robert H. Stier, Jr., Revisiting the Missing Witness Inference——Quieting the Loud Voice from the Empty Chair, 44 Md. L. Rev. 137, 139-43 (1985).

¶13 However, contrary to the language of Graves, the instruction does not create a presumption; it describes a permissible inference. Booth v. Frankenstein, 209 Wis. 362, 370, 245 N.W. 191 (1932); 2 McCormick on Evidence § 264, at 322 (Kenneth S. Broun ed., 7th ed. 2013). The instruction allows jurors to decide whether it was more natural for one party to

---

[5] The best evidence rule provides that "[t]o prove the content of a writing, recording or photograph, the original writing, recording or photograph is required, except as otherwise provided . . . by . . . statute." Wis. Stat. § 910.02.

[6] The spoliation doctrine allows a fact-finder to draw a negative inference against a party who destroys relevant documents. Jamie S. Gorelick et al., Destruction of Evidence § 2.1, at 32 (1989).

call a material witness who was within that party's control than for the other party to call the witness and whether the witness' absence was satisfactorily explained.[7]  Furthermore, a court may give the instruction only if there are facts in the record that would allow the jury to reasonably draw a negative inference from the absence of a particular material witness.[8]  Thoreson v. Milwaukee & Suburban Transp. Corp., 56 Wis. 2d 231, 237, 201 N.W.2d 745 (1972); see also State v. Glenn, 199 Wis. 2d 575, 585, 545 N.W.2d 230 (1996) (instruction on lesser-included offense proper only when there is evidence to support it).  In other words, materiality, control, and reasonableness of the inference are threshold requirements.  We now examine these requirements individually.

### 1.  Materiality

¶14 A material witness is one "capable of supplying information of strong probative value for the party's case." Thoreson, 56 Wis. 2d at 237 (quoting Dodge v. Dobson, 21 Wis. 2d 200, 205, 124 N.W.2d 97 (1963) (internal quotation marks omitted)).  One cannot assume that a witness has such information.  Id. (citing Ballard, 33 Wis. 2d 601).  Rather, the

---

[7] Whether a witness is material is a question of law. Jessica J.L. v. State, 223 Wis. 2d 622, 629, 589 N.W.2d 660 (Ct. App. 1998).

[8] We say "particular" witness because a court cannot determine if the witness is material, if it is more natural for one party to call the witness, or if a failure to call the witness supports a negative inference without first identifying that witness.  In other words, these evaluations cannot be made in the abstract.

record must show that the witness' relationship to the issues in the case is such that the witness is capable of producing material testimony. For instance, when a witness' own conduct is at issue in a civil trial, the witness is usually material. E.g., Coney v. Milwaukee & Suburban Transp. Corp., 8 Wis. 2d 520, 527-28, 99 N.W.2d 713 (1959) (instruction was proper when the defendant transportation company failed to call the driver of its trolley bus, and the driver's negligence was at issue). The same holds true when the witness' job required him or her to make an assessment relevant to the claim. E.g., Schemenauer v. Travelers Indem. Co., 34 Wis. 2d 299, 308-09, 149 N.W.2d 644 (1967) (instruction was proper when the defendant claimed amnesia, which was relevant to his credibility but not necessary to his claim, and failed to call his treating physician); Dodge, 21 Wis. 2d at 205 (instruction was proper when the extent of the plaintiff's injuries was at issue and she did not call her treating physician); DeChant v. Monarch Life Ins. Co., 204 Wis. 2d 137, 149-50, 554 N.W.2d 225 (Ct. App. 1996) (instruction was proper in a bad-faith insurance action when the defendant failed to call its field agent who assessed the plaintiff's claim).

¶15 A party also may show that the absent witness has material information through other foundational evidence. For example, in Carr v. Amusement, Inc., 47 Wis. 2d 368, 177 N.W.2d 388 (1970), the intoxication of a slip and fall plaintiff was at issue. When the plaintiff did not call his wife, with whom he

had been sitting at the same end of the bar,[9] the court properly gave the instruction because "the wife could have produced testimony relevant to the events that occurred while she was with her husband at the bar, specifically including how much alcohol he had consumed." Id. at 376.

¶16 When there is no evidence that a witness could supply material information, the instruction is improper. Thoreson provides a good example. In that case, a transportation company failed to call a passenger who was riding on a bus that struck a child who ran into its path. The court explained that the instruction was improper because "[w]e cannot assume the bus passenger was a material witness; he may or may not have seen the accident." Thoreson, 56 Wis. 2d at 237. Similarly, in Ballard, we affirmed a refusal to give the instruction when an injured plaintiff did not call her chiropractor because it was not "clear from the record" that she saw the chiropractor for injuries she sustained in the accident. Ballard, 33 Wis. 2d at 614-15. We also held that a party's mere assertion that a witness has material information is insufficient to support giving the instruction. Id. at 615.

¶17 Additionally, even a witness capable of supplying relevant information will not support giving the missing witness instruction if that information would be merely cumulative. Featherly v. Cont'l Ins. Co., 73 Wis. 2d 273, 282-83, 243 N.W.2d

---

[9] Appendix to Brief of Plaintiff-Appellant at 153, Carr v. Amusement, Inc., 47 Wis. 2d 368, 177 N.W.2d 388 (1970) (citing Transcript of Record at ¶297).

806 (1976) (testimony of the plaintiff's reconstruction expert would have been "superfluous in light of other evidence"); <u>Karl v. Emp'rs Ins. of Wausau</u>, 78 Wis. 2d 284, 300, 254 N.W.2d 255 (1977) (testimony of the plaintiff's family physician would have been cumulative in light of a psychiatrist's testimony).

### 2. More natural for one party to call a witness

¶18 As to the second requirement, that a witness be peculiarly within one party's control or that it be more natural for one party to call a witness than the other party, courts "cannot assume the witness was more available to" one party than another.[10] <u>Thoreson</u>, 56 Wis. 2d at 238. That it was "more natural" for one of the parties to have called an absent witness is grounded in the concept that one party had more control over the witness than the other party. <u>McGowan v. Story</u>, 70 Wis. 2d 189, 200, 234 N.W.2d 325 (1975). We have held that it is improper to give the absent witness instruction when the witness is equally available to both parties. <u>Capello v. Janeczko</u>, 47 Wis. 2d 76, 84-85, 176 N.W.2d 395 (1970).

### 3. Absence/Inference relationship

¶19 Finally, the instruction is proper only when the failure to call a witness reasonably leads to the conclusion that "the party is unwilling to allow the jury to have the full truth." <u>Ballard</u>, 33 Wis. 2d at 615-16. This requirement is satisfied when a party does not satisfactorily explain its

---

[10] Because Kochanski does not argue that the absent witnesses were within Speedway's control, we focus on the "more natural" prong of this requirement.

11

failure to call a material witness that is peculiarly within its control. We require that factual foundation to prevent a party from "hav[ing] the burden, at his peril, of calling every possible witness to a fact, lest his failure to do so will result in an inference against him." Id. at 615.

¶20 Satisfaction of all three requirements is important because the instruction has significant "potential [for] inaccuracy and unfairness." Stier, supra, at 151, 153 ("qualifications on the use of the rule are intended to limit its application to those situations in which the inference has a basis in fact"). Assumptions upon which the instruction is based are not always true. For example, the inference assumes that a party intentionally fails to produce evidence, yet "such an intention is not clear from the mere absence of evidence in court." Id. at 145. Even if a party intentionally fails to call a witness, its decision is not necessarily the product of "fear that weaknesses in the case will be exposed" or a nefarious desire to hide evidence. Id.

¶21 Moreover, modern rules of procedure and evidence[11] create mechanisms by which to accomplish the rule's objectives without the risk of "add[ing] a fictitious weight to one side or another of the case." Burgess v. United States, 440 F.2d 226, 234 (D.C. Cir. 1970); Herbert, 911 F.2d at 1048 (Federal Rules

---

[11] "If discovery is available but not employed, the party ought not to be allowed to resort to the somewhat speculative inference when discovery would substitute certainty." McCormick, supra, at 320 n.19 (citing Jenkins v. Bierschenk, 333 F.2d 421, 425 (8th Cir. 1964)).

12

of Evidence and Federal Rules of Civil Procedure "render[] the uncalled-witness rule an anachronism.").

¶22 These concerns have led courts and lawmakers to increasingly limit, and in some instances eliminate, the instruction.  Stier, supra, at 151; see also Conn. Gen. Stat. § 52-216c (eliminating the instruction in civil cases); Herbert, 911 F.2d at 1047 ("the uncalled-witness rule has no place in federal trials").  Accordingly, we reiterate that facts in the record, not assumptions or speculation, must establish materiality, control, and the reasonableness of a negative inference before the instruction may be given.

### C.  Application

¶23 As the court of appeals correctly concluded, the record in the present case lacks factual evidence necessary to uphold the circuit court's decision to give the absent witness instruction.  Starting with materiality, Kochanski presented no evidence that the former Speedway employees on duty at the time of Kochanski's fall had information of strong probative value. Just as the court could not presume a bus passenger saw the accident in Thoreson, we cannot presume that employees on duty at the time of Kochanski's fall could testify about Speedway's snow removal methods and processes or what was done that day. See Thoreson, 56 Wis. 2d at 237.  Speedway's witness list indicates that it hired a contractor to provide snow removal services.

¶24 As to the circuit court's assertion that current employees could testify about Speedway's snow removal methods

13

and processes, the record does not contain facts that show that a particular current employee could provide information "of strong probative value" on that point.  Dodge, 21 Wis. 2d at 205.  Additionally, Kochanski did not argue to the circuit court that the instruction was proper based on Speedway's failure to call current employees.  The circuit court appears to have constructed that theory, prior to the close of trial, based on pure speculation.  This had the effect of improperly placing a burden on Speedway to call "possible witness[es] to a fact, lest [its] failure to do so will result in an inference against [it]."  Ballard, 33 Wis. 2d at 615.

¶25 Next, Kochanski did not establish that the former employees were peculiarly under Speedway's control or that it was more natural for Speedway to call former employees than for Kochanski to call them.  The circuit court reasoned that it was more natural for Speedway to call its former employees because Speedway did not effectively prove that the absent witnesses were ex-employees and that "[f]or all [the court] know[s], they're currently employed in a different SuperAmerica."  It also found that even if the witnesses were ex-employees, they still had a special relationship with Speedway because "[e]x-employees . . . have to obtain letters of recommendation for future employers from their former employer" and there is a possibility that "the manager may be on a pension or a deferred pension."  These findings are clearly erroneous.  State v. Arias, 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748.  The record lacks any evidence that the uncalled witnesses were

14

working at a different Speedway, that they had contacted Speedway for letters of recommendation, or that the manager was drawing a pension from Speedway.

¶26 Additionally, Kochanski read the names and addresses of the former employees into the record, so their whereabouts were known to him. Kochanski had obtained these names and addresses through Speedway's answers to his interrogatories, yet he made no showing that he could not compel their appearance at trial by subpoena. The safe-place claim was Kochanski's to prove; it was not Speedway's obligation to disprove it.

¶27 The absent witness instruction allows for a negative inference in order to encourage parties to present, not conceal, relevant evidence. Herbert, 911 F.2d at 1046. However, "the substance of a witness' testimony is uncertain." Stier, supra, at 145. This uncertainty is too great to allow for a negative inference when an absent witness' relationship to a party is not predictive of the witness' testimony. Without evidence that former employees were in the control of or indebted to Speedway, there is no reason to conclude that their testimony would naturally favor one party or the other.

¶28 Speedway chose to defend its liability with surveillance footage of the accident, which it believed was sufficient to prove that it was not liable for Kochanski's injuries. It explained that it did not call the manager on duty at the time of the accident because he could not be located at his last known address, which was that of his parents who had not heard from him in some time. Kochanski provided no evidence

15

that called the truthfulness of Speedway's explanation into question. Kochanski provided no factual foundation in the record from which it reasonably could be concluded that there existed a relationship between the former employees' absences and the inference that their testimony would have been unfavorable to Speedway.

¶29 Having concluded that the circuit court's decision to give the instruction was erroneous; we must next decide if it was prejudicial. This requires an understanding of the substantive law that underlies Kochanski's claims.

### D. Kochanski's Substantive Claims

¶30 Kochanski's complaint alleges both common law negligence and safe-place claims. The sole question regarding liability reads as follows: "Was Speedway SuperAmerica LLC, through the acts of its employees, negligent in failing to maintain the Speedway SuperAmerica premises as safe as its nature would reasonably permit on February 6, 2007?"[12]

¶31 The special verdict question on liability is problematic because common law negligence and the safe-place statute involve different standards of care and different elements of proof.[13] With a negligence claim, a defendant is

---

[12] Special verdict question no. 1.

[13] Compare Sturm v. Simpson's Garment Co., 271 Wis. 587, 74 N.W.2d 137 (1956). In that case, the plaintiff pleaded both safe-place and ordinary negligence violations. The special verdict questions on the safe-place claim and the negligence claim were separated as follows:

liable when he has a duty of ordinary care that he breaches and the breach is a cause of damage to the plaintiff. <u>Hoida, Inc. v. M&I Midstate Bank</u>, 2006 WI 69, ¶23, 291 Wis. 2d 283, 717 N.W.2d 17. However, with a safe-place claim, an employer or owner of a public building has a duty to maintain the building as safely as its nature will reasonably permit. Wis. Stat. § 101.11(1); <u>Megal v. Green Bay Area Visitor & Convention Bureau, Inc.</u>, 2004 WI 98, ¶22, 274 Wis. 2d 162, 682 N.W.2d 857.

¶32 In order to be subject to the higher standard of care under the safe-place statute, a defendant must have actual or constructive notice that an unsafe condition or defect exists. <u>Megal</u>, 274 Wis. 2d 162, ¶11. Constructive notice is a fiction that attributes knowledge of a fact to a person "as if he had actual notice or knowledge although in fact he did not." <u>Strack v. Great Atl. & Pac. Tea Co.</u>, 35 Wis. 2d 51, 54-55, 150 N.W.2d 361 (1967).

¶33 In <u>Megal</u>, we explained constructive notice further:

> In the context of an alleged safe-place violation, the general rule is that an employer or

---

Question 1: Did defendant Simpson's Garment Company fail to have the platform here in question as free from danger to frequenters as the nature of the premises would reasonably permit? . . .

. . . .

Question 3: Was defendant Simpson's Garment Company, at or about the time and place of the accident, negligent in failing to furnish a mat to cover the platform here in question?

<u>Id.</u> at 589.

owner is deemed to have constructive notice of a defect or unsafe condition when that defect or condition has existed a long enough time for a reasonably vigilant owner to discover and repair it. Ordinarily, constructive notice requires evidence as to the length of time that the condition existed.

The length of time required for the existence of a defect or unsafe condition that is sufficient to constitute constructive notice depends on the surrounding facts and circumstances, including the nature of the business and the nature of the defect. We have carved out a limited exception to the general rule that temporal evidence is required before constructive notice can arise. . . .

[W]hen an unsafe condition, although temporary or transitory, arises out of the course of conduct of the owner or operator of a premises or may reasonably be expected from his method of operation, a much shorter period of time, and possibly no appreciable period of time under some circumstances, need exist to constitute constructive notice.

Megal, 274 Wis. 2d 162, ¶¶12-13 (internal citations and quotations omitted).

¶34 As explained above, it is the "general rule . . . that constructive notice is chargeable only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation." May v. Skelley Oil Co., 83 Wis. 2d 30, 36, 264 N.W.2d 574 (1978). In addition, "constructive notice [usually] cannot be found when there is no evidence as to the length of time the condition existed." Kaufman v. State St. Ltd. P'ship, 187 Wis. 2d 54, 59, 522 N.W.2d 249 (Ct. App. 1994). However, when it is reasonably probable that an unsafe condition will occur because of the nature of the business, or the manner in

18

which the owner conducts the business, a much shorter period of time may support constructive notice.  Strack, 35 Wis. 2d at 55.

¶35 Accordingly, if a plaintiff who alleges a safe-place violation cannot prove actual notice of an unsafe condition, or the length of time the unsafe condition existed sufficient to support constructive notice, he or she must prove constructive notice by offering evidence of "the nature of the business, the nature of the [unsafe condition], and the public policy involved" so that the jury could find that the defendant's methods and processes would reasonably be expected to give rise to the unsafe condition.  May, 83 Wis. 2d at 37.[14]

¶36 Speculation as to how long the unsafe condition existed and what reasonable inspection would entail are insufficient to establish constructive notice.  Megal, 274 Wis. 2d 162, ¶20 (defendant did not have constructive notice of french fry on which plaintiff slipped because plaintiff provided no "testimony about the usual management and maintenance of a

---

[14] See, e.g., Steinhorst v. H. C. Prange Co., 48 Wis. 2d 679, 684, 180 N.W.2d 525 (1970) (constructive notice satisfied when slip and fall plaintiff introduced evidence that a defendant retail store's self-service display of shaving cream led to spills on the floor on at least five previous occasions and that 15 minutes before the accident, a store clerk observed "boys playing around" with the display); Strack v. Great Atl. & Pac. Tea Co., 35 Wis. 2d 51, 55-56, 150 N.W.2d 361 (1967) (defendant grocery store charged with constructive notice when its method of operating a self-service fruit display caused an unsafe condition).

61,000 square-foot public building" or what is "reasonable to expect for the management of such a facility").[15]

¶37 Furthermore, given the weather that often occurs in February in Wisconsin, standing alone, a temporary natural accumulation of snow is insufficient to provide notice of an unsafe condition under the safe-place statute. See Bersch v. Holton St. State Bank, 247 Wis. 261, 262, 19 N.W.2d 175 (1945) (concluding that wet floor caused by snow tracked into bank while it was snowing did not support liability because constant floor mopping was not required). The safe-place statute does not make employers and owners insurers of frequenters. Megal, 274 Wis. 2d 162, ¶9.

¶38 Special verdict question no. 1, the question directed to Speedway's liability, asked the jury to determine whether Speedway violated the higher standard of care required by the safe-place statute because it asked whether Speedway made the "premises as safe as its nature would reasonably permit on

---

[15] See also Kaufman v. State St. Ltd. P'ship, 187 Wis. 2d 54, 522 N.W.2d 249 (Ct. App. 1994) (defendant did not have constructive notice of a banana on which plaintiff slipped because there was no evidence that defendant did or did not do something to create the unsafe condition).

February 6, 2007."[16] Therefore, in order to find in Kochanski's favor, the jury had to find that Speedway had notice, actual or constructive, of the allegedly unsafe condition because notice is a required predicate for a safe-place claim. Topp v. Cont'l Ins. Co., 83 Wis. 2d 780, 789, 266 N.W.2d 397 (1978); see also Gerdmann v. United States Fire Ins. Co., 119 Wis. 2d 367, 371, 350 N.W.2d 730 (Ct. App. 1984) (concluding that the determination of whether the owner had notice of an unsafe condition is generally a jury question).

¶39 It was Kochanski's burden to "make a showing sufficient to establish the existence of a[ll] element[s] essential" to his safe-place claim, here notice of an unsafe condition that caused injury. Transp. Ins. Co. v. Hunzinger Constr. Co., 179 Wis. 2d 281, 290-92, 507 N.W.2d 136 (Ct. App. 1993) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). However, Kochanski presented no evidence that Speedway did not have satisfactory snow removal methods and processes or that it had satisfactory snow removal methods and processes but did not follow them. The jury had Speedway's surveillance video that showed the yellow curb clearly visible through a light

---

[16] Special verdict question no. 1 limits inquiry to the acts of Speedway's employees. However, an owner can violate the safe-place statute in other ways. See Megal v. Green Bay Area Visitor & Convention Bureau, Inc., 2004 WI 98, ¶9, 274 Wis. 2d 162, 682 N.W.2d 857 (citing Gross v. Denow, 61 Wis. 2d 40, 47, 212 N.W.2d 2 (1973)) ("safe-place statute addresses unsafe conditions, not negligent acts"). Because special verdict question no. 1 asked whether the premises was as safe as its nature would reasonably permit, the jury had to find that all of the requirements of a safe-place claim were met.

21

accumulation of snow on the walkway where Kochanski fell. Therefore, the jury likely coupled the video with the negative inference from the jury instruction, as urged by counsel for Kochanski, to find that Speedway had constructive notice of an unsafe condition. We next examine prejudice.

### E. Prejudice

¶40 When properly used, the absent witness instruction will not "act as a substitute for affirmative proof" but rather, will be "used by the jury in weighing the evidence actually produced." Zuber v. N. Pac. Ry. Co., 74 N.W.2d 641, 650 (Minn. 1956). To hold otherwise would cause the instruction to operate as a presumption rather than as an inference.

¶41 Normally, a party seeking relief must produce evidence to satisfy each element of his claim and bear the risk of non-persuasion. Fleming James, Jr., Burdens of Proof, 47 Va. L. Rev. 51, 51 (1961). However, when one party has evidence within its exclusive control, a presumption in favor of the other party may be appropriate. Francis H. Bohlen, The Effect of Rebuttable Presumptions of Law Upon the Burden of Proof, 68 U. Pa. L. Rev. 307, 314 (1920) (presumptions arise when there is a "need [to] relax[] the stringency of the proof," such as when "the power to produce evidence of the fact on which the litigant's rights depend is exclusively in the power of [his or her] opponent"). These concepts inform our prejudice analysis.

¶42 A party cannot rely on the inference from the missing witness instruction to satisfy a necessary element of proof for that party's claim. Paulsen Lumber, Inc. v. Anderson, 91

22

Wis. 2d 692, 699, 283 N.W.2d 580 (1979) (concluding that "[e]ven were the defendant's failure to produce the subpoenaed documents without adequate excuse, the resultant inference cannot be used to relieve the plaintiff of its obligation to establish a prima facie case"). Therefore, an erroneously given absent witness instruction is prejudicial when a party with the burden of proof uses the inference from the instruction to provide factual proof for an element of a claim. Id.; Zuber, 74 N.W.2d at 650.

¶43 An erroneously given absent witness instruction misleads jurors when it allows them to find that a party has satisfied an element of a claim when it has not. In other words, an erroneously given absent witness instruction is prejudicial when the jury could not have found that the party requesting the instruction proved all of the elements of his or her claim without drawing the inference that a party has prevented the jury from having "the full truth." Paulsen Lumber, 91 Wis. 2d at 698-99; Ballard, 33 Wis. 2d at 616. That is precisely what happened in the present case.

¶44 Without inferring from Speedway's decision not to call former employees as witnesses that its snow removal methods and processes could reasonably be expected to give rise to an unsafe condition or that there were satisfactory methods and processes but the employees did not follow them, the jury would not have found that Kochanski satisfied the notice element of his safe-place claim. Kochanski provided no evidence that Speedway had actual notice of an unsafe condition based solely on the video showing a light accumulation of snow. Compare Hannebaum v.

23

Direnzo & Bomier, 162 Wis. 2d 488, 500, 469 N.W.2d 900 (Ct. App. 1991) (slip and fall defendants who asked arriving clients about continuing weather conditions two-and-one-half hours after their agent salted had actual notice of icy conditions).

¶45  Kochanski also offered no evidence as to how long the alleged unsafe condition existed.  His testimony that a Speedway employee applied salt to the walkway after his fall does not establish the length of time that the snow, which Kochanski alleged concealed the curb, contrary to the video depiction, was a dangerous condition before the accident.  Nor does the weather record from Milwaukee Mitchell Airport, which Speedway used to dispute the amount of snow accumulation, establish a dangerous condition at the particular Speedway store where the accident occurred.  Having submitted special verdict question no. 1 that asked the jury whether Speedway made the "premises as safe as its nature would reasonably permit," which describes the standard of care under the safe-place statute, and without proving actual notice of an unsafe condition or the length of time the allegedly unsafe condition existed, Kochanski had to prove constructive notice to succeed on liability.[17]

---

[17] There is an additional exception to the notice requirement under the safe-place statute.  When a defect is structural, meaning it "arises by reason of the materials used in construction or from improper layout or construction," no notice is required.  Mair v. Trollhaugen Ski Resort, 2006 WI 61, ¶22, 291 Wis. 2d 132, 715 N.W.2d 598 (quoting Barry v. Emp'rs Mut. Cas. Co., 2001 WI 101, ¶28, 245 Wis. 2d 560, 630 N.W.2d 517) (internal quotation marks omitted)).

¶46 Instead of subpoenaing or deposing the former employees who were working at the time of his fall and questioning them about any snow removal methods and processes Speedway may have had in place at that time, Kochanski's attorney took another route. At trial, he had a member of his staff read Speedway's interrogatory responses that identified the former employees and provided their last known addresses into the record. He then requested the absent witness instruction and after it was given, he argued:

> The law says . . . you can infer that had they called that witness, they would have gotten some unfavorable testimony.
>
> Why didn't [Speedway] call anybody? What would that unfavorable testimony have been?
>
> It makes you wonder what's going on[.] What is it that's being decided at the highest levels of SuperAmerica? . . . Why don't you get to hear the whole story?

In essence, he told the jury that despite the lack of any evidence as to Speedway's snow removal methods and processes, the jury should infer notice from Speedway's failure to call any employees as witnesses.

---

This exception does not apply. While Kochanski testified that he expected the curb's ramp location to be directly in front of the door and Speedway argued that "Kochanski's defense concerning . . . contributory negligence was that the curb opening was in the wrong place," Kochanski never made the legal argument that a structural defect caused his fall. To be sure, if Kochanski intended to argue the curb's location was a structural defect, he would have objected when Judge Siefert gave the latter portion of Wis JI——Civil 1900.04, which instructs the jury that they must find notice.

25

¶47 However, we already have decided that providing proof necessary to a plaintiff's claim is not a proper function of the missing witness instruction.  Paulsen Lumber, 91 Wis. 2d at 699.  If Kochanski could not establish actual notice or the length of time the defect existed, he should have produced evidence that Speedway's methods and processes could either reasonably have been expected to give rise to an unsafe condition or that Speedway had satisfactory methods and processes, but they were not followed.  Kochanski did neither.

¶48  To allow the absent witness instruction to substitute for evidence in this manner would subvert the requirement that a plaintiff prove notice in a safe-place claim.  Accordingly, we conclude that the erroneous giving of the absent witness instruction was prejudicial, and we affirm the decision of the court of appeals.

### III.  CONCLUSION

¶49  We conclude that the circuit court's decision to give the absent witness instruction was an erroneous exercise of discretion because there was no evidence in the record that the absent witnesses, former Speedway employees who had been on duty at the time of the accident, were material and within Speedway's control or that it was more natural for Speedway, rather than Kochanski, to call them.  Furthermore, Speedway's decision not to call the former employees did not reasonably lead to the conclusion that it was unwilling to allow the jury to have "the full truth."  Ballard, 33 Wis. 2d at 616.  And finally, the instruction was prejudicial because without drawing a negative

inference about Speedway's snow removal methods and processes from Speedway's decision not to call the former employees as witnesses, the jury would not have found that Kochanski satisfied the notice element of his safe-place claim that was necessary to liability. Accordingly, we affirm the court of appeals' decision and remand for a new trial.

*By the Court.*—The decision of the court of appeals is affirmed.

¶50 ANN WALSH BRADLEY, J. *(dissenting).* If an attorney were advising someone who had fallen because of a snow-covered or icy sidewalk, likely one of the things the client would be told is to take a picture of the conditions with a cell phone or camera.

¶51 Why? A picture says a thousand words and represents some of the best evidence. But if a picture says a thousand words, then a video speaks volumes.

¶52 In this case, the conditions, both before and after the fall, were recorded on Speedway's surveillance cameras. The video recordings they created were played to the jury and provided a wealth of information——evidence——about the condition of the area where Mr. Kochanski fell.

¶53 It is only by refusing to acknowledge what is depicted in this video evidence presented to the jury that the majority is able to discard the jury verdict and conclude that Speedway had no notice of the unsafe condition. Thus, the majority usurps the role of the jury, substituting its own limited view of the evidence for that of the actual evidence of record presented to the jury.

¶54 The majority also turns a blind eye to the circuit court's actual rationale for giving the missing witness instruction, thus skewing the circuit court's analysis. As a result, the majority is able to sidestep the deference an appellate court is to give to a circuit court when it makes a discretionary determination that the evidence of record supports the giving of a particular instruction.

1

¶55 Perhaps most problematic of all, however, is not the majority's failure to acknowledge actual evidence of record or ignoring the circuit court's actual rationale for giving the missing witness instruction. Those errors potentially affect the outcome of only this particular case. Most problematic is the majority's failure to acknowledge well-settled safe place precedent which has the potential to unsettle long-standing safe place jurisprudence for years to come.

¶56 When I consider the evidence presented to the jury, the circuit court's actual rationale, and our safe place precedent, I conclude that the jury's findings and the circuit court's discretionary decision to give the missing witness jury instruction are to be given deference. There is credible evidence that supports the jury's verdict. Likewise, the circuit court's discretionary decision to give the absent witness instruction was grounded in a reasonable view of the evidence of record.

¶57 Assuming for argument's sake that it was error to give the instruction, I conclude such error was harmless. Our law is clear that Kochanski could have made closing arguments about the inferences to be drawn from the missing witnesses even without the jury instruction. Contrary to the majority's assertion that the instruction was a substitute for any evidence in the record, there was ample credible evidence——with or without the instruction——for the jury to find that Speedway had notice of the unsafe condition.

¶58 Accordingly, I respectfully dissent.

2

I.

¶59 The majority attempts to avoid the tried-and-true standard of appellate review by simply refusing to acknowledge the evidence of record presented to the jury. It is only by substituting its own limited view of the evidence for that of the actual evidence considered by the jury that the majority is able to overturn the jury's verdict and conclude as a matter of law that Speedway had no notice of the unsafe condition.

¶60 It has long been established that the question of negligence under the safe place statute is for the jury.[1] See Gould v. Allstar Ins. Co., 59 Wis. 2d 355, 361, 208 N.W.2d 388 (1973); Heiden v. Milwaukee, 226 Wis. 92, 102, 275 N.W. 922 (1937); Dugenske v. Wyse, 194 Wis. 159, 165, 215 N.W. 829 (1927). Appellate review of such determinations "is very limited, narrow, and circumscribed." Hoffmann v. Wis. Elec. Power Co., 2003 WI 64, ¶9, 262 Wis. 2d 264, 664 N.W.2d 55. We must view evidence "in a light most favorable to a verdict" and will not upset a verdict or finding of fact if "there is any credible evidence which, under a reasonable view, admits to an

---

[1] The safe place statute states:

> Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe . . . for frequenters thereof . . . and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. . . .

Wis. Stat. § 101.11(a).

3

inference which supports the verdict." Becker v. Barnes, 50 Wis. 2d 343, 345, 184 N.W.2d 97 (1971).

¶61 Our review is even more restrained where, as here, the verdict has the approval of the circuit court. In such cases we have repeatedly stated that jury determinations are afforded "special deference." D.L. Anderson's Lakeside Leisure Co. v. Anderson, 2008 WI 126, ¶22, 314 Wis. 2d 560, 757 N.W.2d 803; Hoffmann, 262 Wis. 2d 264, ¶9; Meurer v. ITT General Controls, 90 Wis. 2d 438, 450, 280 N.W.2d 156 (1979). "Therefore, this court will not upset a jury verdict unless there is such a complete failure of proof that the verdict must have been based on speculation." Hoffmann, 262 Wis. 2d 264, ¶9 (citing Coryell v. Connecticut, 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979)).

¶62 Notice, in particular, is a matter this court has generally declared to be a jury question. Burmek v. Miller Brewing Co., 12 Wis. 2d 405, 413, 107 N.W.2d 583 (1961); see also Werner v. Gimbel Bros., Inc., 8 Wis. 2d 491, 493, 99 N.W.2d 708 (1959) ("The only issue on this appeal is the question of fact whether the defendants' actual or constructive notice of the unsafe condition of the walk warned them in time to require them to take reasonable precautions to prevent such an accident. We consider that the evidence bearing on that issue presents a jury question not to be determined as a matter of law.").

¶63 Here, the jury was instructed that in order to find that Speedway failed to maintain the premises as safe as its nature would reasonably permit, it must find that Speedway had

actual or constructive notice of the defect. The jury made such a finding, which the majority now overturns as a matter of law.

¶64 The majority is able to disregard the jury's findings because it fails to acknowledge that the evidence considered by the jury showed the unsafe condition, that the employees had notice of the condition, and that an employee later ameliorated the condition by salting. Instead it suggests that the only relevant information on the video is that it was snowing. See Majority op., ¶37 ("[A] temporary natural accumulation of snow is insufficient to provide notice of an unsafe condition under the safe-place statute."), ¶44 ("Kochanski provided no evidence that Speedway had actual notice of an unsafe condition based solely on the video showing a light accumulation of snow."), ¶48 ("To allow the absent witness instruction to substitute for evidence in this manner would subvert the requirement that a plaintiff prove notice in a safe-place claim.").

¶65 The heart of the safe place claim rests on the issues of notice of the condition of the premises and procedures employed by Speedway to keep the premises "as safe as the nature of the . . . place . . . will reasonably permit." See Wis. Stat. § 101.01(13). Contrary to the majority's conclusion, there was ample credible evidence in the record—both testimonial and video—to support the jury's findings.

¶66 The jury heard testimony that between one half and two inches of snow had fallen that morning. Kochanski testified that as he approached the front door of the Speedway store, he observed what he thought was a wheelchair cut-out from the

5

elevated sidewalk abutting the store. It was immediately in front of the door. To the right there was a visible segment of a yellow painted line that marked the edge of the elevated sidewalk. No yellow painted line was visible immediately in front of him. Rather, it was covered with snow.

¶67 Likewise, the video pictures revealed to the jury that snow covered all portions of the yellow painted line that edged the elevated sidewalk, with the exception of a segment of the yellow paint to the right of the doors. The edge of the sidewalk was partially hidden to those who entered and exited the front entry door. [2]



¶68 The video pictures also revealed that the outside snow conditions were in plain view of the Speedway employees. At all relevant times, at least one employee was stationed at a cash register located within a few feet of the front door and immediately next to the front side of the building. The front side of the building as well as the front doors were glass.

---

[2] This image is from 12:54:46 on the surveillance tape. The online version of this opinion displays the images in color and more clearly shows where the snow obscured the yellow line from vision.

6

¶69 Kochanski told the jury that after he fell he lay in front of the entry door, writhing in pain. He observed two Speedway employees looking out at him, but they did nothing to assist him. The video picture[3] below shows the two Speedway employees looking out the window at Kochanski during the time that he is lying on the sidewalk.



¶70 Kochanski testified at trial that as he was lying on the ground in front of the door, he saw someone come out of the store with salt. He stated that she came around the corner on the north side of the building and then went back. The video footage presented to the jury also revealed someone salting after Mr. Kochanski was taken from the scene. The first picture below[4] shows a woman salting the sidewalk. The second video picture, from approximately 45 minutes later, shows that after the fall and salting, the yellow line edging the pavement was visible to all.

---

[3] This image is from 12:54:57 of the surveillance tape. Again, the online version of this opinion is displayed in color and more clearly shows the images.

[4] The first image is at 12:59:21 on the surveillance tape, the second image is at 01:45:22 on the surveillance tape.

 

¶71 The video footage is helpful in that it demonstrated to the jury the unsafe condition, i.e. the snow covering the yellow line on the curb, that the unsafe condition was in plain view of Speedway employees, that Speedway had some policy or procedure on salting, and that the salting eliminated the unsafe condition.  When considering all of the evidence presented to the jury, it is apparent that there is credible evidence that supports the jury's findings that Speedway had notice of the unsafe condition and that it did not maintain the premises as safe as its nature would reasonably permit.

## II.

¶72 In addition to ignoring evidence of record, the majority also turns a blind eye to pivotal parts of the record which state the circuit court's actual rationale for giving the missing witness instruction.  As a result, the majority skews the circuit court's analysis.

¶73 This court accords deference to a circuit court's decision to give a particular jury instruction.  A circuit court is on the front lines during a trial.  It sees the evidence firsthand and is in the best position to evaluate whether it

supports giving a particular jury instruction. As the majority correctly notes, "[a] circuit court has broad discretion to instruct a jury." Majority op., ¶10 (citing Nommensen v. Am. Cont'l Ins. Co., 2001 WI 112, ¶50, 246 Wis. 2d 132, 629 N.W.2d 301).

¶74 After reviewing the evidence and considering the parties' arguments, the circuit court decided to give the absent witness jury instruction. Admittedly, the missing witness instruction is to be sparingly given. Here, the circuit court clearly stated its reasoning on the record and succinctly summarized its reasoning for giving the instruction. The first two reasons focus on the former employees who did not testify:

> Number one, all five were placed on the witness list by Speedway;
>
> Number Two, it does not appear that any effort was made to subpoena any of those five;

The third reason discusses Speedway's failure to call any of its current employees:

> Number three, as to Speedway's policy and practices, current employees are capable of giving that testimony, and none of them has been subpoenaed either.

The fourth reason focuses on the materiality of their testimony, reasoning that the jury has a right to know Speedway's policies regarding salting, particularly whether there was any salting done of the sidewalk area before the accident:

> And then Number Four, I think that the jury has a right to know what Speedway's policies are regarding salting; and, particularly the videotape, at least so far, has not shown whether or not the premises or the area were salted before the accident.

For all of those reasons, the Court has decided that Instruction 410 [the absent witness instruction] should be given.

¶75 On appeal, "review of the trial court's decision is deferential." DeChant v. Monarch Life Ins. Co., 204 Wis. 2d 137, 148, 554 N.W.2d 225 (Ct. App. 1996). Our examination is two-fold: (1) did the circuit court's instruction correctly state the law and (2) was the instruction "grounded on a reasonable construction of the record." Id. at 151.

¶76 Here, no one argues that the jury instruction misstated the law. We are left then to examine whether a reasonable view of the evidence of record supports the giving of the instruction.

¶77 Instead of deferring to the circuit court, the majority skews the circuit court's analysis and concludes that it was error to give the absent witness instruction.

¶78 At the threshold of its analysis, the majority correctly notes there are three elements necessary to support a jury instruction regarding an absent witness: (1) that the uncalled witness has material information, (2) that the uncalled witness is within the control of the party or that it is more natural for a party to call that witness, and (3) that it is reasonable to infer that the absent witness would have exposed facts unfavorable to the party.[5] Majority op., ¶13. After

---

[5] The majority states: "a court may give the instruction only if there are facts in the record that would allow the jury to reasonably draw a negative inference from the absence of a _particular_ material witness." Majority op., ¶13 (citing Thoreson v. Milwaukee & Suburban Transp. Corp., 56 Wis. 2d 231, 237, 201 N.W.2d 745 (1972); State v. Glenn, 199 Wis. 2d 575, 585, 545 N.W.2d 230 (1996)) (emphasis added).

10

determining that the three elements have not been met, the majority concludes that the giving of the instruction was error.

¶79 In reaching this conclusion, the majority skews the circuit court's stated rationale in two ways. First, in considering materiality, it reframes the issue, focusing on whether the employees had knowledge of the independently contracted snow removal methods rather than the actual focus of the circuit court——Speedway's policies for salting. Majority op., ¶23. In elaboration, the majority cites the lack of proof that the employees would know about the snow removal services, relying on the fact that Speedway's witness list indicated it had an independent contractor for snow removal. Id.

¶80 The circuit court's rationale had nothing to do with the independently contracted snow plowing procedures. Rather, the circuit court clearly stated that its concern about Speedway's salting policies informed the fourth rationale for giving the absent witness instruction: "I think that the jury has a right to know what Speedway's policies are regarding salting; and, particularly the videotape, at least so far, has not shown whether or not the premises or the area were salted before the accident."

---

For several reasons it appears that the majority's use of the word "particular" is akin to a fugitive word in the sentence: (1) the cases cited neither support nor even mention the word "particular" anywhere in the opinions; (2) because the word "particular" is not further used and the concept is not further discussed, it is unclear in application what degree of particularity is required; and (3) in some situations it may be unworkable because the party asking for the instruction may not know what "particular" witness or witnesses are knowledgeable and should have been called to testify.

11

¶81 In this case, testimony regarding Speedway's salting policies is relevant to determining whether Speedway had reasonably adequate processes in place to maintain their premises in as safe a condition as its nature would reasonably permit. A reasonable construction of the record supports the circuit court's determination that the employees would have this information. As noted above, Mr. Kochanski's testimony described someone coming out of the store and salting while he was lying on the ground. The videotape also shows someone salting after Mr. Kochanski had left. Indeed, from the video footage, the results after the salting can also be viewed. Further, Speedway's witness list indicates that the employees might be called to testify about Speedway's policies and procedures concerning maintaining the safety of the premises.

¶82 Even if the employees could not testify about policies and procedures, their lack of knowledge regarding a salting policy or procedure may be relevant. Likewise, their knowledge (or lack thereof) of the unsafe condition was directly at issue due to the safe place claim.

¶83 Second, the majority also skews the circuit court's stated rationale in its analysis of whether it would be more natural for Speedway or Kochanski to call the employees to testify by focusing exclusively on former employees. It concludes it is not more natural for Speedway to call the former employees but leaves a total void in its analysis regarding whether it would be more natural for Speedway to call current employees as witnesses to testify about the policies and

procedures for salting. Majority op., ¶24. Although the circuit court specifically addressed current employees in its analysis, the majority dismisses them entirely. Id. Rather than analyzing the circuit court's actual rationale, it attempts to delegitimize it by merely noting that Kochanski did not advance the argument. Id.[6]

¶84 If it had analyzed the propriety of giving the missing witness instruction vis-a-vis current employees, the majority's conclusion would be unsupportable. So what does it do? It ignores the current employees and as a result also ignores the circuit court's stated rationale.

¶85 The circuit court explained that the third basis of its reasoning for giving the missing witness instruction focused exclusively on current employees, not former employees: "Number three, as to Speedway's policy and practices, current employees are capable of giving that testimony, and none of them has been subpoenaed either."

_____

[6] The majority also suggests that giving the absent witness instruction based on Speedway's failure to call current employees is somehow improper as it places the burden on Speedway to call "'possible witness[es] to a fact, lest [its] failure to do so will result in an inference against [it].'" Majority op., ¶24 (quoting Ballard v. Lumbermens Mut. Cas. Co., 33 Wis. 2d 601, 615, 148 N.W.2d 65 (1967)) (alterations in majority op.).

In Ballard, this court stated that the absent witness instruction does not place a burden on a party to call "every possible witness to a fact." Id. However, that statement was made in reference to an absent witness whose testimony would have been cumulative of other testimony presented. Id. Requiring Speedway to call a witness (or sufficiently explain witnesses' absences) is far different from requiring Speedway to call every possible witness.

13

¶86 Kochanski argues that the absent witness instruction was appropriate based on Speedway's failure to introduce the testimony of any of the employees on duty on the day of his accident or any other employees (including current employees) who would have knowledge of Speedway's practices and procedures regarding salting and snow removal. Under our precedent, current employees are viewed as being under the control of their employer, or at least more natural for the employer to call. See, e.g., Coney v. Milwaukee & Suburban Transp. Corp., 8 Wis. 2d 520, 527, 99 N.W.2d 713 (1959).

¶87 Indeed, at oral argument Speedway acknowledged the obvious: when it comes to current employees, it would be easier for Speedway to compel their testimony and they would be more likely to testify in favor of their employer.

> J. Bradley: If this had been a situation where the employees, or some of them, were still current - how does that affect your analysis and argument? Would it?
>
> Attorney for Speedway: Well if there were some current employees, that, I think that would have made a difference. Because then there's an employer-employee relationship. And it's easier to compel that person to appear. That person who's a current employee is much more willing or much more apt to testify favorably for their employer.

Yet, the majority fails to acknowledge the obvious. The consequence of this failure is more than just having an analysis that is a couple of bubbles off plumb. By reaching its conclusion without considering current employees, the majority skews not only the circuit court's stated rationale, it also skews the result of its opinion.

14

¶88 If the majority had considered the current employees as absent witnesses, it would be reasonable to conclude that it would be natural for Speedway to call the employees as witnesses and that their testimony would naturally favor Speedway, satisfying the third showing necessary for giving the absent witness instruction. See Coney, 8 Wis. 2d at 527 (where employee was a material witness, "the failure on the part of the defendant to call its own employee as a witness, or to satisfactorily explain the reason for his not being called as a witness permits an inference that the witness' testimony would be or is unfavorable to the defendant's cause.").

¶89 In sum, the majority errs by analyzing its own skewed version of the circuit court's rationale rather than analyzing the actual rationale stated on the record. Had it analyzed the circuit court's actual rationale, the majority's conclusion that the instruction was erroneously given could not stand. Here, the jury instruction correctly stated the law and was grounded on a reasonable construction of the record. Accordingly, the discretionary decision to give the jury instruction is to be accorded deference by a reviewing court. DeChant, 204 Wis. 2d at 148.

### III.

¶90 The majority also misstates or ignores well-settled safe place precedent which has the potential to unsettle safe place precedent for years to come.

¶91 As the majority explains, a plaintiff must establish that a defendant had actual or constructive notice of an unsafe

15

condition in order to prevail on a safe place claim. Majority op., ¶32. It indicates that constructive notice can be established in two ways: (1) by showing that the unsafe condition existed for a long enough time that a reasonably vigilant owner would have discovered and repaired it, or (2) by showing the nature of the business, the nature of the condition, and the public policy involved so that the jury could find that the defendant's methods and processes would reasonably be expected to give rise to the unsafe the condition. Id. at ¶34-35. The majority concludes that because none of these was shown, the jury would not have found that the defendant had actual or constructive notice of the unsafe condition without taking an impermissible inference from the absent witness jury instruction. Id. at ¶44-45.

¶92 Missing from the majority's analysis is any reference to our plain view precedent. Constructive notice may be established by showing that the unsafe condition was in plain view of the defendant. See Terrence Berres, Boyle's Wisconsin Safe-Place Law (online ed. 2006) ("Time of a defect's existence is of no materiality where it was readily observable to an agent or employee who was in the area.").

¶93 For example, in Rudzinski v. Warner Theatres, Inc., 16 Wis. 2d 241, 114 N.W.2d 466 (1962), where a woman slipped on wet spots on the floor only a few feet from where the usher was sitting, the court concluded there was a sufficient basis for finding notice even without any indication of how long the spots had been there. "This is because [the wet spots] were in plain

16

view of this usher and the jury would be warranted in concluding that he should have seen them. This would afford sufficient basis for a finding of constructive notice." Id. at 249.

¶94 Likewise, in Caldwell v. Piggly Wiggly Madison Co., 32 Wis. 2d 447, 145 N.W.2d 745 (1966), even though the unsafe condition existed for only a short period of time, the court determined that there was sufficient evidence of constructive notice because the manager was in a position from which he could have seen the unsafe condition if he had looked in that direction. The court explained that "[the jury] could have concluded that the hazard was in plain view even if [the manager] in fact had not seen it." Id. at 455.

¶95 Here, the majority fails to acknowledge that the evidence shows that the unsafe condition was in plain view of an employee. Kochanski fell in front of the doors to the Speedway. The doors and surrounding façade of the building are glass. From this, the jury could have determined that the unsafe condition was in plain view of an employee inside the store and that an employee should have observed the condition, constituting constructive notice to Speedway.

¶96 Based on the video evidence, the jury could also have found that Speedway employees had actual notice of its unsafe condition. Indeed, the video footage from Speedway's surveillance cameras shows that the checkout counter is right next to the window and an employee standing there behind the register prior to the accident. Later portions of the video show two employees looking out the window at Kochanski.

17

¶97 The majority overlooks this plain view evidence and fails to apply our plain view safe place precedent. Instead, it incorrectly determines that the jury would not have found notice but for the absent witness instruction.[7]

¶98 The majority's discussion of the safe place claim also errs by ignoring well-established caselaw on the special verdict question. The majority recites the verdict question that the circuit court read regarding liability: "Was Speedway SuperAmerica LLC, through the acts of its employees, negligent in failing to maintain the Speedway SuperAmerica premises as safe as its nature would reasonably permit on February 6, 2007?" Id., ¶30. The majority then suggests that this instruction was improper because it combined the standards of care and the elements of proof for negligence and safe place claims. Id., ¶31. In support of this suggestion, the majority points to a case from the mid-1950s. Majority op., ¶31 n.13 (citing Sturm v. Simpson's Garment Co., 271 Wis. 587, 74 N.W.2d 137 (1956)).

¶99 Our law on the form of the safe place jury instruction has since changed. The circuit court's special verdict question

_____

[7] Additionally, the physical appearance of an unsafe condition may be circumstantial evidence from which a jury could infer the length of time it had been present. See, e.g., Gulbrandsen v. H & D, Inc., 2009 WI App 138, ¶15, 321 Wis. 2d 410, 773 N.W.2d 506.

In this case, the snow in the area of the fall was dirty and trampled. From this the jury could have inferred that the snow had been there for a long enough time that Speedway should have discovered it and thus had constructive notice of the unsafe condition.

18

was consistent with the change in law and with caselaw that we have been relying on for decades. For example, see Krause v. VFW Post No. 6498, 9 Wis. 2d 547, 554, 101 N.W.2d 645 (1960); Mullen v. Reischl, 10 Wis. 2d 297, 307, 103 N.W.2d 49 (1960); Petoskey v. Schmidt, 21 Wis. 2d 323, 331-32, 124 N.W.2d 1 (1963); Presti v. O'Donahue, 25 Wis. 2d 594, 599, 131 N.W.2d 273 (1964); Skybrock v. Concrete Constr. Co., 42 Wis. 2d 480, 484, 167 N.W.2d 209 (1969); Carr v. Amusement, Inc., 47 Wis. 2d 368, 375, 177 N.W.2d 388 (1970); May v. Skelley Oil Co., 83 Wis. 2d 30, 34, 264 N.W.2d 574 (1978); Topp v. Continental Ins. Co., 83 Wis. 2d 780, 783, 266 N.W.2d 397 (1978); Barry v. Emp'rs. Mut. Cas. Co., 2001 WI 101, ¶33, 245 Wis. 2d 560, 630 N.W.2d 517.

¶100 In 1960, the Krause court instructed circuit courts to use essentially the same language that the circuit court used here. 9 Wis. 2d at 554. Krause instructed that the special verdict question ask: ". . . was the defendant negligent with respect to maintaining the dance hall as safe as the nature of the place reasonably permitted?" Id. Likewise, the special verdict question that the circuit court read is based on the model jury instruction: "[w]as (defendant) negligent in failing to (construct) (repair) (maintain) the premises as safe as the nature of its business would reasonably permit?" Wis JI——Civil 1900.4.

¶101 The majority's criticism of the instruction appears to be that it combines a negligence claim with a safe place claim. Majority op., ¶31. This criticism overlooks the long recognized role of negligence in a safe place claim. A safe

19

place claim is based on negligence with a higher standard of care than ordinary negligence. Krause, 9 Wis. 2d at 552. See also Barry, 245 Wis. 2d 560, ¶18 ("Wisconsin's safe place statute, Wis. Stat. § 101.11(1), is a negligence statute that . . . establishes a duty greater than that of ordinary care imposed at common law."). See also Gennrich v. Zurich Am. Ins. Co., 2010 WI App 117, ¶23, 329 Wis. 2d 91, 789 N.W.2d 106.

¶102 The special verdict question used in this case is essentially the same as the language that was indicated by our caselaw decades ago and was in substance the same as provided in the model jury instruction, Wis JI——Civil 1900.4. The model instruction and comments were approved by the Wisconsin Jury Instruction Committee in 1974. Wis JI——Civil 1900.4, Comment. Despite the suggestion of the majority, there was nothing improper with the wording of the instruction used in this case.

IV.

¶103 The majority's discussion of the safe place law is contained in its analysis of whether it was harmless error to give the absent witness instruction. It determines that because the jury had no basis in the record to find that Speedway had notice of the unsafe condition, the error in giving the absent witness instruction was not harmless. Majority op., ¶48.

¶104 Contrary to the majority I conclude that even if it was error for the circuit court to give the absent witness instruction, such error was harmless.

¶105 Notably, Kochanski could still have pointed to the nonproduction of the employees in closing arguments and

20

suggested the jury make an inference even if the circuit court had not given the absent witness instruction. See Feldstein v. Harrington, 4 Wis. 2d 380, 390, 90 N.W.2d 566 (1958) ("It also would have been proper for plaintiff's counsel to comment in the argument to the jury on such failure of the defendants to have called Dr. Houkom, if the fact had previously been established in evidence that such doctor had examined the plaintiff at the defendants' request."); cf. Ballard., 33 Wis. 2d at 615 ("[The court] did permit the defendant to comment to the jury upon the nonproduction of the chiropractor and, as a consequence, the defendant could not have been prejudiced by the failure to give the specific instruction.").

¶106 The only grounds for the majority's conclusion that the instruction was not harmless is the lack of evidence of notice on the safe place claim. Majority op., ¶¶44, 49. The majority reasons that because there is no evidence of notice in the record, the only way the jury would have found in favor of Kochanski was if it had taken an impermissible inference based on the absent witness jury instruction. Id. Contrary to the majority's assertion that the instruction was a substitute for any evidence in the record, here there was ample credible evidence——with or without the instruction——for the jury to find that Speedway had notice of the unsafe condition.

V.

¶107 As discussed above, the majority fails to acknowledge the evidence presented to the jury supporting its verdict; fails to deal with the circuit court's actual rationale, including the

21

analysis of current employees and the policies on salting; and fails to apply established safe place precedent on plain view and jury instructions.

¶108 Contrary to the majority, I apply the tried-and-true standards of appellate review and conclude that both the jury's determination of negligence and the circuit court's discretionary decision to give the absent witness instruction are to be accorded deference. There was ample credible evidence in the record for the jury's verdict. Further, the circuit court's instruction correctly stated the law and was based on a reasonable construction of the record. In any event, even if it was error to give the instruction, such error was harmless. Accordingly, I respectfully dissent.

¶109 I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.

¶110 DAVID T. PROSSER, J.   *(dissenting).*  This case raises troubling issues about appellate review.

¶111 James E. Kochanski (Kochanski) sustained serious injuries when he tripped on a raised sidewalk and fell as he attempted to go inside a Speedway SuperAmerica gas station to pay his bill.  The incident occurred at 12:54 p.m. on February 6, 2007.  It had been snowing that morning, and snow had accumulated on the ground.  According to Kochanski, the snow obscured his vision of the raised sidewalk in front of the door to the station, and he fell.

¶112 On August 5, 2009, Kochanski and his wife filed suit against Speedway SuperAmerica LLC (Speedway) in Milwaukee County Circuit Court.  They claimed that Speedway had been negligent and had violated Wisconsin's safe-place statute, Wis. Stat. § 101.11.

¶113 Because this is Wisconsin, not Florida, individuals and merchants must deal with the frequency of snow-covered surfaces during winter months.  Even in good weather, people can trip and fall.  Bad weather, with its attendant ice and snow, increases this risk.  However, the fact that a person falls on a merchant's property does not necessarily mean that the merchant can or should be held responsible for the person's injuries.

¶114 Whether a merchant is liable for a person's injuries on the merchant's property is dependent on the factual circumstances of each case, as those facts and circumstances are presented to the trier of fact at trial.  The plaintiff must satisfy his burden of proof, and the defendant is entitled to

1

challenge the sufficiency of the plaintiff's evidence before being asked to present a defense. In this case, the defendant did not challenge the sufficiency of the evidence at the end of the plaintiff's case or ask the court later for a directed verdict.

¶115 When a case is permitted to go to a jury, the jury's verdict is entitled to substantial deference. When the circuit court approves a jury verdict, "this court will not overturn the jury's verdict unless 'there is such a complete failure of proof that the verdict must be based on speculation.'" Morden v. Cont'l AG, 2000 WI 51, ¶40, 235 Wis. 2d 325, 611 N.W.2d 659 (quoting Coryell v. Conn, 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979)). As we said in Ballard v. Lumbermens Mutual Casualty Co., 33 Wis. 2d 601, 605, 148 N.W.2d 65 (1967):

> The review of this court:
>
> [M]ust be based on the rule that when there is any credible evidence which under any reasonable view supports the jury finding, especially when the verdict has the approval of the trial court, it should not be disturbed. This is another way of saying the evidence must be viewed in the light most favorable to the verdict.

Id. (quoting Springen v. Ager Plumbing & Heating, Inc., 19 Wis. 2d 487, 489, 120 N.W.2d 692 (1963)).

¶116 Given this well established law, a party that fails to obtain the verdict it expected almost inevitably searches to find error in the trial. In this case, the error alleged is Judge Seifert's decision to give the absent witness instruction to the jury. Wis JI──Civil 410.

2

¶117 The law on review of jury instructions also is clear. This court will not reverse a circuit court's decision to give a jury instruction "absent an erroneous exercise of discretion." State v. Hubbard, 2008 WI 92, ¶28, 313 Wis. 2d 1, 752 N.W.2d 839 (citation omitted). Even if a circuit court does err in giving a jury instruction:

> No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of . . . misdirection of the jury . . . unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

Wis. Stat. § 805.18(2).

¶118 The majority here appears astonished that the circuit court gave the following absent witness instruction:

> If a party fails to call a material witness within [its] control, or whom it would be more natural for that party to call than the opposing party, and the party fails to give a satisfactory explanation for not calling the witness, you may infer that the evidence which the witness would give would be unfavorable to the party who failed to call the witness.

Wis JI——Civil 410.

¶119 Kochanski requested the absent witness instruction. Speedway opposed it. Judge Seifert supported his ruling as follows:

> Okay. Now I'll make my ruling:
>
> Number one, all five were placed on the witness list by Speedway;

3

Number [t]wo, it does not appear that any effort was made to subpoena any of those five;

Number three, as to Speedway's policy and practices, current employees are capable of giving that testimony and none of them have been subpoenaed, either.

. . . .

And then [n]umber [f]our, I think that the jury has a right to know what Speedway's policies are regarding salting; and, particularly the videotape, at least so far, has not shown whether or not the premises or the area were salted before the accident.

For all of those reasons, the Court has decided that Instruction 410 should be given.

¶120 The judge's reference to "all five" refers to the five persons that Speedway named in response to Kochanski's request in interrogatories to identify "each person you believe has knowledge of the facts and circumstances surrounding the accident." The five people Speedway submitted included the former store manager, two former customer service representatives, and two former food stewards. The names of these people appeared on Kochanski's witness list as adverse witnesses, but they also appeared on Speedway's witness list. Speedway later explained to the jury that the former store manager had "moved out of state" [Pennsylvania]. "We tried to contact him . . . but were unable to do so." Three other "former" employees were listed as having Milwaukee addresses; one former employee lived in Waukesha. Speedway did not explain why these "former" employees were not called, or why no current employee at the store was called, except to say that "Speedway is not going to be calling any witnesses from the store. . . .

4

We don't need any testimony from the manager in this case. It's all clear from the videotapes."

¶121 At trial, Speedway presented no live witnesses and no witnesses at all on the issue of liability. With respect to liability, Speedway relied on videotape from the store which was introduced by the plaintiff.

¶122 To overturn the jury's verdict on the basis of the absent witness instruction, the majority must determine, first, that giving the instruction constituted an erroneous exercise of discretion, and, second, that the "misdirection of the jury" affected the substantial rights of Speedway. This is where the troubling issues come in.

¶123 The majority finds that "there was no evidence in the record that the absent witnesses, former Speedway employees who had been on duty at the time of the accident, were material . . . or that it was more natural for Speedway, rather than Kochanski, to call them." Majority op., ¶2. The majority also concludes that "the instruction was prejudicial because without drawing a negative inference about Speedway's snow removal methods and processes from Speedway's decision not to call the former employees, the jury would not have found that Kochanski satisfied the notice element of his safe-place claim that was necessary to liability." Id.

¶124 A determination by the majority that "there was no evidence in the record that the absent witnesses . . . were material" is problematic. First, as stated in the majority opinion and quoted above in paragraph 123, the majority's

5

determination refers only to five former employees, not to the former and current employees referred to by the circuit court. Second, the determination that "there was no evidence in the record" appears to be a finding of fact, directly at odds with the determination of the circuit court.[1] Third, the jury instruction specifically refers to "a material witness," not every witness who might be called. It must be remembered that the defendant did not call any witnesses. Implicitly, then, the majority is determining that there were no material witnesses for Speedway to call——no former employees, no current employees, no corporate executives, nobody at all who could provide probative evidence on company policies on salting, snow removal, and safety or what happened the morning and noon hour of February 6, 2007 at the station. If Speedway had called even one witness, the propriety of the absent witness instruction would likely have been greatly diminished.

¶125 Speedway did not call anyone to explain company policy, if any, and how that policy was executed that morning. No one came to affirm that he or she had salted, swept, or shoveled the sidewalk sometime that morning before the incident.

¶126 This, of course, might not have been necessary if Speedway had produced videotape of some employee salting, sweeping, or shoveling the affected area before the incident, but it did not. The tape begins at 12:45 p.m. The incident

---

[1] At the least, the determination fails to give proper deference to the circuit court because the circuit court must have determined that at least one person among Speedway's current and former employees was a material witness.

6

occurred at 12:54 p.m., nine minutes later. The jury did not see any tape showing events before 12:45 p.m. Why? The tape could have shown employees salting, sweeping, or shoveling the raised sidewalk during the morning. Or not.

¶127 In addition, no employee came to boast that no one had ever tripped on that raised sidewalk before February 6, or after February 6. As a result, there was no one there who might have had to acknowledge that several people had tripped at the same spot——if any had——making clear visibility of the step even more important.

¶128 This court does not know all the facts because the jury was not given all the facts.

¶129 The majority asserts that there was "no evidence in the record" that it was more natural for Speedway to call one of its former employees than Kochanski. This is unpersuasive. All the former employees had a past relationship with Speedway and an interest in vindicating their own conduct when the accident occurred. They had no relationship with Kochanski, who expected them to be adverse. These potential witnesses were not neutrals like the passenger on the bus in Thoreson v. Milwaukee & Suburban Transp. Corp., 56 Wis. 2d 231, 237-38, 201 N.W.2d 745 (1972). Speedway was in a better position to assess whether its former employees had relevant information than Kochanski was, in part because Speedway had all the videotape. Speedway had an even stronger relationship with its current employees and its executives and the ability to determine whether any one of them

7

would be a valuable witness. But it decided to offer no witnesses.

¶130 Speedway could have given a persuasive argument why it called no witness at the trial. It satisfactorily explained the absence of the former manager, but it did not explain the absence of anyone else, except to say, "It's all clear from the videotapes."

¶131 It was not all clear from the videotapes because the videotapes were not complete. They didn't start until mere minutes before the incident. This is precisely the point that the circuit court made in its fourth justification for the instruction.

¶132 In short, the majority is second-guessing the circuit court's decision to give the absent witness instruction in several ways that are inappropriate.

¶133 Even if the absent witness instruction is deemed to be an erroneous exercise of discretion, there should be no reversal of the jury verdict unless there was prejudice affecting the substantial rights of the defendant. This presents another problem in the majority opinion.

¶134 If the majority had said, "the jury could not have found that Kochanski satisfied the notice element of his safe-place claim that was necessary to liability" without the absent witness instruction, it would have been concluding that the instruction permitted the jury to draw an inference from evidence that was insufficient to support the inference. Such a

conclusion would probably have required the court to dismiss the case rather than send it back for a new trial.

¶135 The majority does something different. It concludes that "the jury would not have found that Kochanski satisfied the notice element of his safe-place claim that was necessary to liability" without the absent witness instruction. Majority op., ¶2 (emphasis added). This, however, is pure conjecture.

¶136 We task plaintiffs and defendants with putting forth their best evidence so that the party with the stronger case prevails. If a litigant's evidence is truly so scant that an alleged erroneous jury instruction is necessary to lend artificial credence to an insufficiently supported claim, we should not give that litigant another chance. Perhaps, confronted with the daunting standards of review, the majority feels that it is fairer to send the case back for trial to see if another jury will reach the same conclusion without the absent witness instruction. The new trial will be a touchstone for the majority's determination that there is insufficient evidence to support the safe-place claim without the absent witness instruction. Of course, the new trial will be skewed because the defendant will have a second chance to put on formerly absent witnesses so that these defense witnesses will not be "absent" a second time.

¶137 For the foregoing reasons, I respectfully dissent.

9